NELSON *v.* CRAWFORD.

1. ASSAULT—WHAT CONSTITUTES.
    Where defendant dressed himself in woman's clothes, and
    went, in a spirit of fun, with no malicious motive or intent,
    to the residence of plaintiff, a neighbor, where he neither
    offered nor threatened violence, but merely followed plaintiff
    into her house, making no demonstration other than to tap
    the ground with a parasol, it was properly *held* that his con-
    duct did not amount to an assault.

2. DAMAGES—INJURY BY FRIGHT.
    Defendant, with no malicious motive or intent, dressed him-
    self in woman's clothes, and went at dusk to the home of
    plaintiff, who became frightened at his appearance, and, six
    weeks later, sustained a miscarriage, which she attributed to
    the fright. *Held*, that the fright, unaccompanied, as it was,
    by any immediate physical injury, could not be made the
    basis of a recovery of damages for a result which could not
    have been contemplated by defendant.[1]

Error to Cass; Smith, J.    Submitted November 17,
1899.    Decided December 21, 1899.

Case by Sarah Nelson against Robert Crawford for per-
sonal injuries.    From a judgment for defendant on ver-
dict directed by the court, plaintiff brings error.    Affirmed.

Plaintiff and her husband reside on a farm about 40 rods
from the residence of defendant.    One evening defendant,
dressed in woman's clothes, navy-blue bicycle skirt, light
waist, sailor hat with flowers on it, and a thin, black face-
veil, took a parasol, and went to her house.    He had been
a frequent visitor there, and was accustomed to play with
her children.    Although for many years he had been ad-
judged insane or incompetent, his malady was of a harm-

[1] For fright as basis for cause of action, see note to *Ewing* v
*Railway Co.*, (Pa.) 14 L. R. A. 666.

less character, and it had never been considered necessary to restrain him. There is no testimony to show that he acted from malicious motives, or with any intent to do injury to plaintiff or any one. He said to others, shortly afterwards, "I did it to have a little fun; to see if they had any nerve." As he approached the back of the house, plaintiff stepped to the back door, and saw defendant standing three or four rods away. She spoke to him, but he made no reply,—only "mumbled." She testified that she was frightened, and ran into the house, and into her bedroom, where her husband was in bed; that she called to her husband to get up, telling him that "there is something here,—I don't know what it is;" that defendant followed her into the house, and to the bedroom door; that her husband took up a stick of wood, raised it, and told defendant to get out of the house; that defendant then gave his name; that she was made ill by fright; and that on October 22d, 42 days after the fright, she had a miscarriage, which she attributes to the fright. The only demonstration he made was by tapping the end of his parasol on the ground or floor. This suit is brought to recover damages resulting from the fright. The court directed a verdict for the defendant, on the ground that there was no assault or attempt to do her any bodily or physical injury, and that the law does not recognize fright alone, unaccompanied by any physical injury, as a basis for damages.

*John Wooster* and *John R. Carr*, for appellant.

*Charles E. Sweet*, for appellee.

GRANT, C. J. (*after stating the facts*). We think the court properly held that no violence was offered or threatened, and therefore there was no assault. The second question is new in this State. The decisions are not harmonious, and cannot well be reconciled. The court, in directing the verdict, quoted the following language from the late case of *Mitchell* v. *Railway Co.*, 151 N. Y. 110 (34 L. R. A. 783, 56 Am. St. Rep. 605):

"If the right of recovery in this class of cases should be once established, it would naturally result in a flood of litigation in cases where the injury complained of may be easily feigned without detection, and where the damages must rest on mere conjecture or speculation. The difficulty which often exists in cases of alleged physical injuries, in determining whether they exist, * * * would not only be greatly increased, but a wide field would be opened for fictitious or speculative claims. To establish such a doctrine would be contrary to principles of public policy. * * * We think the most reliable and better-considered cases, as well as public policy, fully justify us in holding that the plaintiff cannot recover for injuries occasioned by fright, as there was no immediate personal injury."

The damages claimed in that case were of the same character as those here claimed. The immediate effect of the fright in that case was greater, as the plaintiff became unconscious by reason of the fright. The facts were that, while plaintiff was standing upon the cross-walk of a street, awaiting an opportunity to board one of the defendant's cars, and just as she was about to step upon it, the team attached to the car drew near, turned to the right, and came so close to her that, when they were stopped, she stood between the horses' heads.

Many of the cases are cited and commented on in the recent case of *Braun* v. *Craven*, 175 Ill. 401 (42 L. R. A. 199), in which it was held that no recovery for fright, without physical injury, is authorized by the common law or by statute. The facts of that case are much stronger for the plaintiff than are those in this case. The defendant was the landlord of plaintiff's sister; went to the house to collect rent; found the door ajar; opened it; walked upstairs; stepped inside the bedroom door; saw plaintiff sitting upon the floor; asked what she was doing, waived his arms, and, in a loud and apparently angry voice, said: "I forbid you moving. If you attempt to move, I will have a constable here in five minutes. I refuse to take possession of these premises." Plaintiff testified: "I was so frightened I was paralyzed with fear." Plaintiff recovered a large verdict. In its opinion the court says:

"These acts could not, in the ordinary course of things, have been reasonably anticipated to cause a diseased condition of appellee,—to create in her a seriously-diseased condition. Appellant might have reasonably anticipated that his acts would cause excitement, or even fright; but fright and excitement so seldom result in a practically incurable disease that, from the ordinary experience of mankind, such a result could not have been expected. The evidence for plaintiff was that, by reason of the excitement and fright, a condition of chorea, or St. Vitus' dance, was produced. This is shown to be a diseased physical condition resulting from mental suffering, superinduced by excitement and fright, unattended by injury to the person resulting from impact. Under the pleadings in this case, mere words and gestures are sought to be made actionable because of the nervous temperament of the plaintiff, without which such words and gestures would not be actionable. This would introduce and incorporate in the law a new element of damage,— a new cause of action,— by which a recovery might be had for an injury resulting to one of a peculiarly nervous temperament, while no injury would result to another in identically the same position. Of such a cause of action and liability for damage a dangerous use could be made. No such recovery is authorized under the common law, and no statute gives it."

In *Lynch* v. *Knight*, 9 H. L. Cas. 577, it was held that "mental pain or anxiety the law cannot value, and does not pretend to redress, when the unlawful act complained of causes that alone." A very valuable discussion of the right of recovery for mental pain and suffering alone is found in *Johnson* v. *Wells, Fargo & Co.*, 6 Nev. 224 (3 Am. Rep. 245). That was the first case upon the subject in that court, and the rule is so well and clearly stated that we quote the language:

"It is well to start from the ancient landmark, and to remember that all damage to be recovered in such cases is strictly compensatory; that while it may be possible to compensate bodily pain, and so much of mental suffering as may be indivisibly connected therewith (and this rather on authority than reason), yet that it is absolutely impossible to measure mental agony by money, and that no es-

tablished rule authoritatively commands such futile attempt; and consequently it must be held that so much of the instruction given herein as allowed the jury to consider the plaintiff's pain of mind, aside and distinct from his bodily suffering, was error."

Where the negligence was gross, it was held that no damages could be recovered by reason of peril and fright, because they are too remote. *Atchison, etc., R. Co.* v. *McGinnis*, 46 Kan. 109. Where plaintiff's horses became frightened through the negligence of the defendant, held, that he could not recover for mental suffering, vexation, and anxiety of mind, in the absence of averment and proof of physical injury. *Gulf, etc., R. Co.* v. *Trott*, 86 Tex. 412 (40 Am. St. Rep. 866).

These citations might be multiplied. They are sufficient to show the reasoning of the courts in support of the rule. Similar holdings were had in *West Chicago St. R. Co.* v. *Liebig*, 79 Ill. App. 567; *Wyman* v. *Leavitt*, 71 Me. 227 (36 Am. Rep. 303); *Spade* v. *Railroad Co.*, 168 Mass. 285 (38 L. R. A. 512, 60 Am. St. Rep. 393); *Ewing* v. *Railway Co.*, 147 Pa. St. 40 (14 L. R. A. 666, 30 Am. St. Rep. 709); *Victorian Railways Com'rs* v. *Coultas*, L. R. 13 App. Cas. 222. Some of the decisions above cited are careful to state that their opinions do not reach those cases where there was an intention to cause mental distress or to injure feelings. In some of the cases cited by the plaintiff in support of her theory, the decisions are based upon the violation of a legal right, where at least nominal damages are recoverable, as in a case of the mutilation of a dead body (*Larson* v. *Chase*, 47 Minn. 307 [14 L. R. A. 85, 28 Am. St. Rep. 370]); or the removal of a dead body from its place of burial (*Meagher* v. *Driscoll*, 99 Mass. 281 [96 Am. Dec. 759]); or the unlawful eviction of a tenant (*Fillebrown* v. *Hoar*, 124 Mass. 580). The two cases cited which most strongly support the plaintiff's contention are *Hill* v. *Kimball*, 76 Tex. 210 (7 L. R. A. 618), and *Purcell* v. *Railway Co.*, ▇▇▇▇ n. 134 (16 L. R. A. 203). In *Hill* v. *Kimball*, de▇▇▇▇ ssaulted two

negroes in front of the house occupied by the plaintiff and her husband as tenants, thereby frightening her, and causing a miscarriage. The court frankly stated that the case was a novel one, and they found no precedent for it. In *Purcell* v. *Railway Co.* the correctness of the rule is admitted, but the decision is based upon the fact that there was a physical injury resulting from the confusion, commotion, and excitement upon the car.

We think the clear weight of authority supports the instruction given by the court below. In this case there is no evidence that defendant intended any wrong, or contemplated, or can be held to have contemplated, the consequences alleged to have followed his acts. It was not dark. The time was between "daylight and dark." Plaintiff saw him when he was four rods from the house. Defendant was approaching plaintiff's house along the customary way. Under these circumstances and the authorities above cited, we think the instruction of the court was correct.

Judgment affirmed.

The other Justices concurred.