## HYDE v. STATE.
### (No. 761.)

APPEAL AND ERROR—BILL OF EXCEPTIONS—EXHIBITS—CRIMINAL LAW —INTOXICATING LIQUORS — SALE ON SUNDAY — SUFFICIENCY OF EVIDENCE.

1. Exhibits attached to a bill of exceptions, though they follow the judge's certificate, are to be considered as part of the bill, where they are referred to in the transcript of the evidence preceding the certificate and shown thereby to have been admitted in evidence, and the first paragraph of the bill declares that it includes the transcript of all the testimony offered, introduced and admitted during the trial of the cause, including exhibits introduced by both parties, which transcript follows and, with all the exhibits thereto, is made a part of the bill; such exhibits being embraced within the cover of the document indorsed "Bill of Exceptions", under an indorsement of the title of the cause.

2. In a prosecution for selling intoxicating liquor on Sunday, under the statute prohibiting sales on Sunday by licensed liquor dealers, the time of the sale is material, since it becomes of the gist of the offense.

3. Evidence, on the trial of a licensed liquor dealer charged with having unlawfully permitted a sale of intoxicating liquor on his premises on a certain Sunday, *held* insufficient to show a sale on the Sunday named in the count of the information upon which he was convicted.

[Decided February 17, 1914].              (138 Pac. 550).

ERROR to the District Court, Hot Springs County; HON. PERCY W. METZ, Judge.

The material facts are stated in the opinion.

*John M. Hench,* for plaintiff in error.

In a prosecution for the sale of liquor on Sunday, in violation of the statute prohibiting a sale on that day by a licensed liquor dealer, the State must confine its proof to the charge, and must show by competent evidence that the offense was committed on the day named in the information. There being three counts in the information upon which the defendant was prosecuted, and he having been convicted under one count only, and acquitted upon the others, the sufficiency of the evidence must be determined according to its application to the day named in the count under which the defendant was found guilty. The evidence as to a sale on the day named in the second count—the count upon which defendant was found guilty, is entirely insufficient to support the verdict.

*D. A. Preston,* Attorney General, for the State.

Only such assigned errors as are discussed in the brief of plaintiff in error will be considered. (Boswell v. Bliler, 9 Wyo. 277; Phillips v. Brill, 15 Wyo. 521; R. R. Co. v. Lampman, 18 Wyo. 106). A motion for new trial on the ground of alleged error in the admission or exclusion of evidence should clearly designate the evidence intended to be referred to. (Foster v. State, 59 Ind. 481; Walrath v. State, 8 Neb. 80; R. R. Co. v. Harris, 8 Neb. 140; Edmunds v. State, 34 Ark. 724; Anderson v. Terr., (N. M.) 13 Pac. 21; Sweat v. State, 90 Ga. 315; Benson v. State, 119 Ind. 488). Error in the admission of evidence offered

by the State in a criminal case cannot be prejudicial where it does not tend to establish any element of the offense charged in the count under which the accused was convicted. (Edelhoff v. State, 5 Wyo. 19; Long v. State, 15 Wyo. 262; Leslie v. State, 10 Wyo. 10). An allegation specifying generally as ground for new trial "error of law occurring at the trial" is too indefinite to present any question for consideration. (Miller v. State, 3 Wyo. 657; Boburg v. Prahl, 3 Wyo. 325; R. R. Co. v. Morris, 16 Wyo. 308; Dickerson v. State, 18 Wyo. 440). The sufficiency of the evidence to sustain the verdict cannot be considered for the reason that the bill does not contain all the evidence; the exhibits not being a part of the bill, although they are marked as having been introduced in evidence, for they do not precede the judge's certificate. (France v. Bank, 3 Wyo. 187; Koppala v. State, 15 Wyo. 398; Phillips v. Terr., 1 Wyo. 82; Richardson v. State, 15 Wyo. 465).

*John M. Hench,* for plaintiff in error, in reply, contended that the exhibits attached to the bill of exceptions were sufficiently referred to in the bill to be made a part of it, and that the recitals in the bill are sufficient to show that it contains all the evidence, including the exhibits.

· POTTER, JUSTICE.

The plaintiff in error, Harry N. Hyde, was defendant below, and was charged by information in the District Court, in the County of Hot Springs, with unlawfully selling and permitting the sale of intoxicating liquor on Sunday in violation of Section 5979, Compiled Statutes, 1910. The information contained three counts. The first count charged that on May 11, 1913, "being the first day of the week commonly called Sunday," in said county, the defendant, having license to sell liquors under the laws of Wyoming, did unlawfully, wilfully and knowingly sell intoxicating liquor, to-wit: one glass of beer to one Frank Scott, on said defendant's premises, to-wit: a two-story

building, situated on lot 2 of block 7 in the Town of Thermopolis in said county. By the second count it was charged that in said county, on the 25th day of May, A. D. 1913, "being the first day of the week, commonly called Sunday," the defendant having then and there license to sell intoxicating liquors, did unlawfully, wilfully and knowingly suffer and permit his agent, one J. W. Austin, to sell intoxicating liquor, to-wit: one glass of beer to one J. W. Kelly, on said defendant's premises, to-wit: a two-story building, situated on lot No. 2 of Block No. 7 in the Town of Thermopolis, in said county. The third count, like the second, charged that the defendant did unlawfully, wilfully and knowingly suffer and permit his agent, said J. W. Austin, to sell intoxicating liquor, specifically described as one glass of beer, to J. W. Kelly, on the defendant's premises, said premises being described as in the other two counts, but charged that the said sale was so permitted to be made on the first day of June, 1913, "being the first day of the week, commonly called Sunday." Thus the only difference between the second and third counts is that by the second count the defendant was charged with the violation of the statute by permitting a sale of liquor on Sunday, May 25, 1913, and by the third count with permitting a similar sale on Sunday, June 1, 1913. The jury impaneled to try the cause found the defendant not guilty as charged in the first and third counts of the information, respectively, and guilty as charged in the second count. Upon the verdict of guilty under said second count the defendant was fined in the sum of $100 and ordered to pay the costs of the prosecution. It is here contended on his behalf that the verdict upon the second count is not sustained by the evidence and is contrary to law.

1. The Attorney General contends that the evidence cannot be considered for the reason that the bill of exceptions does not purport to contain all of the evidence. That position, we think, is not well taken. The only ground stated for the contention is that certain exhibits attached to the

bill of exceptions are not a part of the bill because they follow instead of precede the certificate of the trial judge. It is true that certain papers which were received in evidence and marked as exhibits follow the judge's certificate, but they are embraced within the body of the document which is indorsed "Bill of Exceptions", under an indorsement of the title of the cause. And it is recited in the first paragraph of the bill: "Be it remembered, that * * * * * * * the following proceedings were had in the above entitled cause, that is to say, the defendant, Harry N. Hyde, having been charged in said court by information, * * * * * * and jury having been selected and sworn to try the cause, witnesses on the part of the State having been sworn, testified on the part of the State, and witnesses for the defendant having been sworn and testified on the part of the defendant as will be more fully and particularly shown and appear by the following transcript of all the testimony of the witnesses for the State, and for the defendant, offered, introduced and admitted during the trial of said cause, including all objections to interrogatories, rulings of the court, exceptions thereto, and exhibits introduced by both the State and the defendant, said transcript being paged and numbered 1 to 104, inclusive, and reported by the duly appointed and official court reporter, * * * * * * which transcript, as hereinbefore described, is hereby following, made a part hereof together with all the exhibits thereto belonging." The various sheets of the document indorsed as the bill of exceptions, including the exhibits, are bound together within the cover containing such indorsement, and there is nothing to indicate that they were not in the same condition when the certificate of the judge allowing the bill was signed. The several exhibits are referred to in the transcript of the evidence preceding the judge's certificate and shown to have been admitted in evidence. These facts entitle the exhibits to be considered as a part of the bill.

2. The statute defining the offense charged in the information reads as follows:

"Every person or persons, company or corporation, having license to sell liquors under the laws of Wyoming, who shall keep open, or suffer his or their agent or employe to keep open, his or their place of business, or who shall sell, give away or dispose of or permit another to sell, give away or dispose of, on his or their premises, any spirituous, malt, vinous or fermented liquors, or any mixtures of any such liquors, on the first day of the week, commonly called Sunday, or upon any day upon which any general or special election is being held, shall be guilty of a misdemeanor, and upon conviction, shall be fined in any sum not less than twenty-five dollars, or more than one hundred dollars, or imprisoned in the county jail not to exceed three months." (Comp. Stat. 1910, Sec. 5979).

It was shown by the prosecution on the trial that the defendant had a license to conduct a retail liquor business at Thermopolis in said county "in a two-story building, situated on lot 2, block 7, said town", and, as disclosed by the evidence, the prosecution claimed, with reference to the second and third counts in the information, that the defendant had violated the statute as charged in those counts, respectively, by permitting a sale by Austin in a room or rooms occupied by a so-called social club known as the ".Hot Springs Club", on the second floor of the building on the lot mentioned in the defendant's liquor license, the defendant's saloon and place of business being located on the first floor. That claim appears to have been based upon the theory that the defendant's license entitled him to sell intoxicating liquors on either or both floors of the building, except at times prohibited by law, upon a showing that the second floor was a part of the defendant's premises, and that a sale made or permitted by the defendant on that floor of the building on Sunday would constitute a violation of the statute, if it should be found that the second floor was a part of the defendant's premises, and the court so instructed the jury.

The evidence shows that the defendant had a lease of the first or ground floor of the building, and that one George Larsen, who was president of said club, had a lease of the second floor, together with the stairway leading thereto, which stairway was on the outside of the building. It does not appear that there was any stairway within the building, but evidence was introduced by the prosecution to show that a "dumb-waiter" connecting the first and second floors was used by the defendant on week days to deliver liquors to the members of the club in their room or rooms on the second floor. The evidence, however, as to whether the dumb-waiter was in working order at the time in question, or whether it had at any time been used by the defendant is conflicting. The defendant testified that he had not used it, and that it was not in a condition to be used. It was not shown, nor attempted to be shown, that on either of the dates mentioned in the information the dumb-waiter was used by the defendant or any one in his employ, or for serving or delivering any liquor to the club rooms, but the testimony concerning it and its use on week days appears to have been introduced for the purpose of showing that the second floor was a part of defendant's premises for the sale of liquor under his license in connection with his saloon business; and one of the officers of the club testified to a verbal agreement permitting the defendant to serve liquors to the club rooms on week days.

Referring to the second count of the information, it will be observed that it charges the defendant with having permitted a sale by his agent, J. W. Austin, to one J. W. Kelly, on Sunday, May 25, 1913. Upon that count alone the defendant was found guilty . After carefully considering all the evidence we fail to find anything to justify a conviction upon that count, even if it be assumed that the second floor of the building was a part of the defendant's premises, within the meaning of the statute aforesaid. We find no evidence whatever to show, or that tends to show, that any liquors were sold or served in the club room or

rooms on the second floor of the building by Austin, either with or without the permission of defendant, on the day specified in the second count. The only evidence that Austin sold or served any liquors in the club rooms or elsewhere on any Sunday relates to June 1, 1913, the date specified in the third count, upon·which the defendant was acquitted. Austin testified that he commenced working for the defendant on Wednesday, May 28, 1913, and there is nothing in the evidence disputting his testimony in that respect. He also testified that by defendant's orders he served liquors·in the club rooms on Sunday, June 1, 1913. In a prosecution under the statute aforesaid for selling intoxicating liquor on Sunday, the time of the sale is material, since it "becomes of the gist of the offense." (2 Woolen & Thornton on Intox. Liq., Sec. 908). Kelly testified that on Sunday, May 25, 1913, the date specified in the second count, he had two or three "drinks" in the club room, but he does not state what the drinks were, or that they were sold to him or received by him from either Austin or the defendant, or any other person in the latter's employ or representing or acting for him. His testimony as to the payment is that he took out a club membership card on 'that day upon the payment of one dollar to Northrop, the secretary of the club; that he then received also a trade ticket good for one dollar's worth of drinks, and got his "drinks" in the club that day on the trade ticket. The defendant introduced in evidence his ledger account showing that a charge was made to the "Hot Springs Club" on May 24, 1913, for "3 cases Old Age quarts; 2 quarts Yellowstone"; and 2 boxes cigars, aggregating in price $26, and that the charge made on that date was credited on· May 26, 1913, with a cash payment of $26. There was evidence tending to show that during the short time the club had been in existence it was customary for the club or individual members to order a supply of liquors on Friday or Saturday, and that when such an order was given the defendant delivered the liquors to the club room on the day they were ordered, but the evidence is conflicting as to whether such liquors were

generally ordered and afterwards paid for by a club officer or by individual members. And a writing dated May 31, 1913, was introduced in evidence, which appeared to have been signed by several club members, acknowledging the purchase on that date from Hyde of 2 gallons of whiskey, 5 cases of beer, and 3 boxes of cigars, the only effect of which, if any, as to the offense charged in the second count, was to show what may have been the custom with reference to the orders for and delivery of a supply of liquors to the club room for possible use on the following Sunday. Northrop, the club secretary, testified as a witness for the prosecution that trade tickets issued to club members on payment of the membership fee were afterwards redeemed by the witness by paying the amount thereof to Hyde upon their being returned, and that the amount paid by Kelly for his membership card and trade ticket was subsequently paid to Hyde, the latter stating at the time of such payment that Kelly had torn up his trade ticket. But the witness did not state the date of that particular payment, nor was it otherwise shown, nor was it shown that Hyde knew that the money so paid him, or any part of it, represented the price of the "drinks" which Kelly had in the club room on Sunday, May 25, 1913, or, for that matter, on any other Sunday; and we do not understand from the testimony that the use of a trade ticket was confined to a purchase on Sunday.

It is not here contended, and we do not suppose that it would be, that the defendant could be convicted upon the second count of the information, which alleged specifically that he had permitted a sale by another, by showing that instead of permitting his alleged agent to sell he had made the sale himself, or by proof of the sale of whiskey instead of beer, or to a person other than the one specifically named as the purchaser in that count of the information. But if the law would authorize a conviction upon proof of a sale made by the defendant personally at the time stated, the evidence would be insufficient even then to justify a conviction. Conceding that the charge to the club in defendant's ledger for certain liquors on May 24 might tend to show, in con-

nection with the other evidence, that he had delivered the liquors so charged for to the club rooms on that date, for use on the next day, Sunday, May 25, 1913, that charge did not include any beer, and we find nothing in the evidence aside from that ledger account, and the possible delivery of the liquors included therein on the date mentioned in the ledger, that any liquor obtained by Kelly on May 25 was furnished by Hyde, or was any part of the liquor included in the ledger account of May 24. For all that the evidence shows, there may have been liquor in the club room on May 25th not supplied or delivered there by Hyde. But there is so much less evidence to show a sale of liquor in the manner specifically alleged in the count upon which the defendant was convicted that it amounts practically to no evidence at all.

We are at a loss to understand the verdict upon the second count, unless it was the result of a lack of recollection on the part of the jury of the date that Austin was engaged in serving liquors in the club rooms. There was evidence tending to show a sale by Austin to Kelly and others on Sunday, June 1, 1913; that Austin was then in the employ of the defendant, and was directed by the latter to serve the club members on that day with liquors which had been taken to the club room during the previous evening. And had the defendant been convicted upon the third count the verdict might, perhaps, have been sustained by the evidence, if the use of the "dumb-waiter" on week days for serving liquor in the room or rooms on the second floor of the building, if it was so used, could be legally held sufficient to show that the second floor was a part of defendant's premises, within the meaning of the statute defining the offense charged, a question not necessary to be decided. But we think it very clear that the evidence does not sustain the verdict of guilty upon the second count. The judgment must, therefore, be reversed and the cause remanded for a new trial upon the second count of the information.

SCOTT, C. J., and BEARD, J., concur.