# CHARLESTON.

MRS. F. M. LAMBERT *v.* T. J. BREWSTER.

Submitted May 29, 1924.   Decided September 9, 1924.

1.  DAMAGES—*Wilful Tortfeasor Liable for Natural Consequences, Even Though Unforeseen.*

    One who wilfully commits a tort is liable for the natural consequences thereof, even though such consequences were not foreseen by him. (p. 132).

2.  SAME—*Wilful Tort-feasor May be Liable for Physical Ills Resulting From Nervous Shock Though no Physical Impact.*

    Where one by his wrongful and unlawful conduct causes nervous shock or fright to another, which is followed by physical ills as a natural sequence, he is liable in an action therefor, even though there was no physical impact between the body of the person injured and the wrong-doer or any object set in motion by him. (p. 132).

3.  SAME—*Daughter Held Entitled to Recover for Miscarriage Resulting From Nervous Shock Caused by Assault on Father.*

    Where defendant wrongfully and violently assaulted and beat plaintiff's father, in plaintiff's sight and hearing, thereby

causing her to be greatly frightened, and as a consequence
thereof she suffered a miscarriage, defendant is liable to the
plaintiff for all damages which can be directly traced to his
wrongful conduct, even though he was not aware of her
presence or her delicate condition. (p. 132).

Error to Circuit Court, McDowell County.

Action by Mrs. F. M. Lambert against T. J. Brewster.
Judgment for defendant, and plaintiff brings error.

*Reversed and rendered.*

*Crockett & Sanders,* for plaintiff in error.

*Harman & Harman,* for defendant in error.

MEREDITH, PRESIDENT:

Plaintiff seeks to reverse the judgment of the circuit court
of McDowell County setting aside a verdict of $500 in plain-
tiff's favor. Her action is in trespass on the case, and in her
declaration she alleges that while she was in a state of preg-
nancy, on September 3, 1922, the defendant, in her sight, and
knowing her condition, committed an unjustifiable and forci-
ble assault on her, the plaintiffs' father. She alleges that her
father was an elderly man weighing 155 pounds, and that
defendant was a young man weighing 175 pounds, and that
by reason of the unjustified assault, during which defendant
struck plaintiff's father many violent blows, plaintiff under-
went such anguish and distress that she became very ill and
disordered and thereby suffered a miscarriage, for which she
seeks compensation in damages.

The evidence leaves little doubt as to what actually occur-
red. Plaintiff and her husband lived on premises adjoining
those of her father, Mr. Wingo, and defendant lived nearby.
Defendant had five children, and from his testimony it ap-
pears that Wingo or members of his family had undertaken
to correct one or more of the children while they were playing
near the Wingo residence. Defendant resented this inter-
ference, and on the evening of September 3, 1922, he called
on Wingo to interpose his objections. Arriving at the gate,
he called Wingo outside. That the conversation was in heated
words, both admit. Receiving no satisfaction, defendant says

he started to walk away, when Wingo came out of the gate cursing, whereupon defendant turned and struck him, he says, one time, knocking Wingo down. Wingo's son, Sherman, interfered on behalf of his father, but other persons stopped the encounter before serious harm was done. The testimony does not sustain plaintiff's averments as to the respective weights of her father and defendant. In answer to the question "When did you knock him down?" defendant replied: "A little bit later when he got cursing and abusing me." Wingo did not strike or strike at defendant, although defendant claims that Wingo was approaching him with some sort of menacing gestures. Defendant did not attempt by instruction or otherwise to introduce the element of self-defense into the case, or to justify his blow upon any other ground than that he was being cursed and abused. This of course does not justify an assault. Defendant's whole case here is that he is not liable for the injury suffered by plaintiff, of whose presence a short distance away, and of whose delicate condition he was ignorant.

We see three points which merit discussion:

First. Was plaintiff's miscarriage and suffering the proximate result of defendant's assault upon Wingo?

Second. Does defendant's ignorance of plaintiff's presence and condition, if a fact, relieve him of responsibility for the injury suffered by her?

Third. Can defendant be liable for injuries suffered by plaintiff, which injuries are purely the result of the fright and nervous shock which she experienced?

First: It may be stated at once that if the injury which plaintiff suffered was not proximately caused by defendant's wrongful act, there would of course be no liability. Plaintiff viewed the encounter from her door, at a perfectly safe distance, so far as danger from physical impact was concerned. At the sight of her father being knocked down she became weak and nervous, began to scream, and although she had previously felt well that day, she was compelled to go to bed at once, and between 9 and 10 o'clock P. M. suffered a miscarriage. She had been pregnant about two months. Defendant offers two explanations of this mishap: first, that she had suffered a miscarriage about a year before from which

her organs had not fully recovered; and second, that her excitement was caused, not by defendant's assault on her father, but by the action of her brother, Leo, in running in the house apparently in search of a gun wherewith to attack defendant.

Expert medical testimony was taken on the first question. By it the jury was probably convinced that having suffered one miscarriage, a woman would be the more readily susceptible to another. As proof that plaintiff's illness on the present occasion was the result of her former miscarriage and not the result of her mental excitement, they were, as their verdict shows, not persuaded. As to her brother's intentions, she says she had an idea that he may have been in search of a gun, but that this was the moving cause of her injury the jury also refused to believe. Leo testifies that as a matter of fact his real purpose was to prevent his brother, Sherman from securing the weapon.

That miscarriages may be and often are the result of nervous shock and mental disturbance there can not be the slightest doubt. The jury in this case have charged plaintiff's suffering to defendant, whose wrongful assault upon Wingo they have found to be the proximate cause of plaintiff's injury. In the light of the testimony we see no reason for holding otherwise.

Second. But defendant says he did not know of plaintiff's presence and was not aware of her condition, that therefore he could not be responsible for injuries which he could not anticipate or foresee. It is a sufficient answer to this to say that if defendant's wrongful act is the proximate cause of injury to plaintiff, of the character for which the law allows compensation, then the question whether defendant could or should have foreseen the result becomes immaterial. It is in this respect that damages arising from tort and from contract differ.

> " 'The duty to refrain from a tort is a duty which no one can avoid; it is imposed upon him by the law, and no act of his can increase or diminish it. But in entering into a contract he is undertaking a duty which the law does not require of him; its assumption is purely voluntary, and fair-

ness requires that he should be able to understand
the extent of the obligation he undertakes. A just
rule, therefore, would put upon a person who com-
mits a tort the risk of all proximate consequences
of his wrong, but upon one who breaks a contract
such risk as he could have foreseen when he under-
took the duty; and this appears to be the conclusion
of the law'." *Washington etc. Railway Co.* v.
*Westinghouse Electric Co.,* 120 Va. 620, 89 S. E.
131, 91 S. E. 646, quoting Sedgwick, Damages,
§141.

It seems that some would deny the right of recovery where
the plaintiff's condition at the time of the injury is abnorm-
ally delicate, as such susceptibility to injury can not be reas-
onably anticipated. This, however, is not sound doctrine.

"An instruction given in an action for damages
for an injury sustained in a railroad collision,
which limited the recovery to the injury so in-
flicted, independent of injuries suffered by plain-
tiff in other like or similar collisions specified,
is not erroneous if he had become more responsive
to injury because of such former collisions, which
rendered him more susceptible to injury, of which
susceptibility defendant was not aware at the
time of the accident."

"An instruction which directs a verdict for de-
fendant, provided the jury should believe plaintiff
was, when he became a passenger, 'in a highly ner-
vous condition' because of former wrecks, and was
not, therefore, a 'fair average individual', and his
condition was unknown to the carrier, and that the
injury occurred without wanton negligence, and
but for such condition it would have been slight,
if any, had he 'been well' when the collision oc-
curred, is erroneous, because it makes the knowl-
edge of the carrier a condition precedent to the
right to compensation for the injury inflicted."
*Williamson* v. *Hines, Agent,* 89 W. Va. 268, 109
S. E. 237. Accord: *Perkins* v. *Monongahela Val-
ley Trac. Co.,* 81 W. Va. 781, 95 S. E. 797; 8 Va.
Law Reg. p. 244; 5 Am. & Eng. Ency. Law (2d.
ed.) 694; *Purcell* v. *St. Paul City Ry. Co.,* 48
Minn. 134, 16 L. R. A. 203; *S. V. R. R. Co.* v. *Moose,*
83 Va. 827; *Dulieu* v. *White,* 2 K. B. 669.

In *Williamson* v. *Hines,* and other cases cited, the wrong of the defendant was actionable because of its negligent character, but the principle established would certainly not be less true where the act complained of is not mere negligence but a willful tort.

That defendant could not foresee or anticipate plaintiff's injury, therefore, avails him nothing.

Third. We think it can be truly stated that defendant chiefly relies upon his third point, that is, that plaintiff can not recover for physical injuries arising solely from fright and nervous shock occasioned by defendant's action toward her father. The question first to arise, of course, is whether physical injuries resulting from fright unaccompanied by physical impact are compensable. It appears to have been first discussed in the case of *Victorian Railways Commissioners* v. *Coultas,* 13 A. C. 222, and there has been sharp conflict in the authorities since that date, 1888. In that case plaintiff's nervous shock and consequent illness was caused by an act of negligence on the part of defendant, and the court of the Colony in holding for the plaintiff answered three questions which were reserved for its disposal:

1. Whether the damages are too remote to be recovered?

2. Whether proof of impact is necessary?

3. Whether female plaintiff can recover damages for physical or mental injuries, or both, occasioned by fright caused by the negligent acts of the defendant?

The court decided each point against the defendants, but the Privy Council reversed the judgment, holding that damages arising from mental shock could not be considered as a consequence of defendant's negligence; and "without saying that impact is necessary" held that the damages were too remote to justify recovery.

A very large number of the American courts, including many of the highest distinction, have held to the views expressed by the Privy Council in the Coultas case. In 1896 in the case of *Mitchell* v. *Rochester Ry. Co.,* 151 N. Y. 107, 34 L. R. A. 78, the New York court refused a recovery for physical injuries resulting from fright caused by defendant's negligent operation of a horse-car. The opinion in part reads:

"She testified that from fright and excitement caused by the approach and proximity of the team she became unconscious, and also that the result was a miscarriage and consequent illness. Medical testimony was given to the effect that the mental shock which she then received was sufficient to produce that result.

"Assuming that the evidence tended to show that the defendant's servant was negligent in the management of the car and horses, and that the plaintiff was free from contributory negligence, the single question presented is whether the plaintiff is entitled to recover for the defendant's negligence which occasioned her fright and alarm, and resulted in the injuries already mentioned. While the authorities are not harmonious on this question, we think the most reliable and better considered cases, as well as public policy, fully justify us in holding that the plaintiff can not recover for injuries occasioned by fright, as there was no immediate personal injury. (*Lehman* v. *Brooklyn City R. R. Co.*, 47 Hun. 355; *Victorian Railways Com'rs.* v. *Coultas*, L. R. 13 A. C. 222; *Ewing* v. *P. C. & St. L. R. R. Co.*, 147 Pa. St. 40). The learned counsel for the respondent in his brief very properly stated that, 'the concensus of opinion would seem to be that no recovery can be had for mere fright', as will be readily seen by an examination of the following additional authorities: *Haile* v. *Texas & Pacific Ry. Co.*, 23 Lawyers' Rep. 774; *Joch* v. *Dankwardt*, 85 Ill. 331; *Canning* v. *Inhabitants of Williamstown*, 1 Cush. 451; *Western Union Tel. Co.* v. *Wood*, 57 Fed. 471; *Renner* v. *Canfield*, 36 Minn. 90: *Allsop* v. *Allsop*, 5 Hurl. & Nor. N. S. 534; *Johnson* v. *Wells Fargo & Co.* 6 Nev. 224; *Wyman* v. *Leavitt*, 71 Me. 227.

"If it be admitted that no recovery can be had for fright occasioned by the negligence of another, it is somewhat difficult to understand how a defendant would be liable for its consequences. Assuming that fright can not form the basis of an action it is obvious that no recovery can be had for injuries resulting therefrom. That the result may be nervous disease, blindness, insanity, or even a miscarriage, in no way changes the principle. These results merely show the degree of fright or

the extent of the damages. The right of action must still depend upon the question whether a recovery may be had for fright. If it can, then an action may be maintained, however slight the injury. If not, then there can be no recovery, no matter how grave or serious the consequences. Therefore, the logical result of the respondent's concession would seem to be, not only that no recovery can be had for mere fright, but also that none can be had for injuries which are the direct consequences of it.

"If the right of recovery in this class of cases should be once established, it would naturally result in a flood of litigation in cases 'where the injury complained of may be easily feigned without detection, and where the damages must rest upon mere conjecture or speculation. The difficulty which often exists in cases of alleged physical injury, in determining whether they exist, and if so, whether they were caused by the negligent act of the defendant, would not only be greatly increased, but a wide field would be opened for fictitious or speculative claims. To establish such a doctrine would be contrary to principles of public policy.

"Moreover, it can not be properly said that the plaintiff's miscarriage was the proximate result of the defendant's negligence. Proximate damages are such as are the ordinary and natural results of the negligence charged, and those that are usual and may, therefore, be expected. It is quite obvious that the plaintiff's injuries do not fall within the rule as to proximate damages. The injuries to the plaintiff were plainly the result of an accidental or unusual combination of circumstances, which could not have been reasonably anticipated, and over which the defendant had no control, and, hence, her damages were too remote to justify a recovery in this action."

The language quoted is representative of the views of those who would deny recovery, for the reason that it presents three distinct grounds for their conclusions, some courts being governed by one, and some by another. These reasons are:

1. That damages resulting from fright where there is no physical impact are too remote;

2. They can not reasonably be anticipated by defendant;

3. That it is contrary to public policy to allow recovery for damages for personal injuries resulting from fright.

Basing their holdings on one or more of these grounds, we find, among others, the following cases in which the courts have refused to allow relief: *Haile's Curator* v. *Texas & Pac. Ry. Co.*, 60 Fed. 557; *St. Louis etc. R. Co.* v. *Bragg*, 69 Ark. 402, 64 S. W. 226; *Braun* v. *Craven*, 175 Ill. 401, 51 N. E. 657; *Terre Haute Elec. Co.* v. *Lauer*, 21 Ind. App. 466, 52 N. E. 703; *McGee* v. *Vanover*, 148 Ky. 737, 147 S. W. 742; *Spade* v. *Lynn etc. R. Co.*, 168 Mass. 285, 47 N. E. 88; *Nelson* v. *Crawford*, 122 Mich. 466, 81 N. W. 335; *Ward* v. *New Jersey etc. R. Co.*, 65 N. J. L. 383, 47 Atl. 561; *Miller* v. *Baltimore etc. R. Co.* 78 Oh. St. 309, 85 N. E. 499; and *Ewing* v. *Pittsburgh etc. R. Co.*, 147 Pa. St. 40, 23 Atl. 340.

However, the doctrines expressed in the Mitchell and Coultas cases were destined soon to meet with sharp disapproval. In *Dulieu* v. *White & Sons*, 2 K. B. 669 (1901), a pregnant woman sustained a severe nervous shock through the negligent driving of a pair of horses by defendants' servant. In consequence of such shock she gave premature birth to a child, and it was born an idiot. For this she claimed damages. Defendants submitted that the damages were too remote. The court was fully advised of the principles set forth in the Coultas and Mitchell cases, as well as in *Spade* v. *Lynn etc. R. Co.*, *supra*, and yet it repudiated all of those authorities and allowed complete relief. The opinion of Kennedy, Judge, presents so adequately the argument opposing the position taken in the Coultas case and similar decisions, that we can do not better than quote at large therefrom:

> "In this case the only question for the judgment of the court is in the nature of a demurrer. The defendants have pleaded as a matter of law that the damages are too remote, and that the statement of claim upon its face discloses no cause of action. * * *
>
> That fright—where physical injury is directly

produced by it—cannot be a ground of action merely because of the absence of any accompanying impact appears to me to be a contention both unreasonable and contrary to the weight of authority. * *. *

If impact be not necessary, and if, as must be assumed here, the fear is proved to have naturally and directly produced the physical effects, so that the ill results of the negligence which caused the fear are as measurable in damages as the same results would be if they arose from actual impact, why should not an action for those damages lie just as well as it lies where there has been an actual impact?''

Reviewing the Privy Council case of *Victorian Railway Commissioners* v. *Coultas,* the court said:

"A judgment of privy council ought of course to be treated by this court as entitled to very great weight indeed; but it is not binding upon us, and, in venturing most respectfully not to follow it in the present case, I am fortified by the fact that its correctness was treated by Lord Escher, M. R. in his judgment in *Pugh* v. *London, Brighton & South Coast Ry. Co.,* (1896) 2 Q. B. 248, as open to question; that it was disapproved by the Exchequer Division of Ireland in *Bell* v. *Great Northern Railway Company of Ireland,* 26 L. R. Ir. 428, where in the course of his judgment, Palles, C. B., gives a reasoned criticism of the Privy Council's judgment, which, with all respect, I entirely adopt, and, lastly, by the fact that I find that the judgment has been unfavorably reviewed by legal authors of recognized weight, such as Mr. Sedgwick (Sedgwick Damages, 8th ed. p. 861), Sir Frederick Pollock (The Law of Torts, 6th ed. p. 50), and Mr. Bevan (Negligence in Law, 2d. ed. 76). Why is the accompaniment of physical injury essential? For my own part, I should not like to assume it to be scientifically true that a nervous shock which causes serious bodily illness is not actually accompanied by physical injury, although it may be impossible, or at least difficult, to detect the injury at the time in the living subject. I should not be surprised if the surgeon or the physiologist told us that nervous shock is or

may be in itself an injurious affection of the physical organism. Let it be assumed, however, that the physical injury follows the shock, but that the jury are satisfied upon proper and sufficient medical evidence that it follows the shock as its direct and natural effect, is there any legal reason for saying that the damage is less proximate in the legal sense than · damage which arises contemporaneous. * * *

Remoteness as a legal ground for the exclusion of damage in an action of tort means, not severance in point of time, but the absence of direct and natural causal sequence—the inability to trace in regard to the damage the 'propter hoc' in a necessary or natural descent from the wrongful act. A's a matter of experience, I should say that the injury to health which forms the main ground of damages in action of negligence, either in cases of railway accidents or in running-down cases, frequently is proved, not as a concomitant of the occurrence, but as one of the sequelae.''

On p. 679, in referring to the New York case of *Mitchell* v. *Rochester Railway Company,* the court said:

"It may be admitted that the plaintiff in this American case would not have suffered exactly as she did; and probably not to the same extent as she did, if she had not been pregnant at the time; and no doubt the driver of the defendants' horses could not anticipate that she was in this condition. But what does that fact matter? If a man is negligently run over or otherwise negligently injured in his body, it is no answer to the sufferer's claim for damages that he would have suffered less injury or no injury at all, if he had not had an unusually thin skull or an unusually weak heart.''

Reviewing the Massachusetts case of *Spade* v. *Lynn* etc. *Ry. Co.,* the court said: ·

"Naturally one is diffident of one's opinion when one finds that it is not in accord with those which have been expressed by such judicial authorities as those to which I have just referred. But certainly if, as is admitted, and I think justly admitted, by the Massachusetts judgment, a claim

for damages for physical injuries naturally and directly resulting from nervous shock which is due to the negligence of another in causing fear of immediate bodily hurt is in principle not too remote to be recoverable in law, I should be sorry to adopt a rule which would bar all such claims on grounds of policy alone, and in order to prevent the possible success of unrighteous or groundless actions. Such a course involves the denial of redress in meritorious cases, and it necessarily implies a certain degree of distrust, which I do not share, in the capacity of legal tribunals to get at the truth in this class of claims. My experience gives me no reason to suppose that a jury would really have more difficulty in weighing the medical evidence as to the effects of nervous shock through fright, than in weighing the like evidence as to the effects of nervous shock through a railway collision or a carriage accident, where, as often happens, no palpable injury, or very slight palpable injury, has been occasioned at the time."

In the same case Phillamore, J. said:

"I think there may be cases in which A owes a duty to B not to inflict a mental shock on him or her, and that in such a case, if A does inflict such a shock upon B—as by terrifying B—and physical damage thereby ensues, B may have an action for the physical damage, though the medium through which it has been inflicted is the mind. * * *

The difficulty in these cases is to my mind not one of the remoteness of the damage, but as to the uncertainty of their being any duty. Once get the duty and the physical damage following on the breach of duty and I hold that the fact of one link in the chain of causation being mental only, makes no difference."

Reference is made in the above quotation to the decision in the Irish case of *Bell* v. *Great Northern Ry. Co.*, 26 L. R. (Ir.) 328 (1890). In it the Court of Exchequer Division in an able opinion criticised the Coultas case and refused to follow it. In Scotland it was repudiated by the Court of Session in 1910 by the case of *Gilligan* v. *Robb*, S. C. (1910)

856. And finally in *Coyle* v. *Watson,* (1915) A. C. 1, the House of Lords, speaking through Lord Shaw of Dunfermline, said:

> "But in England, in Scotland, and in Ireland alike, the authority of *Victorian Railway Commissioners* v. *Coultas* has been questioned, and to speak quite frankly, has been denied. I am humbly of opinion that the case can no longer be treated as a decision of guiding authority. * * * I should add that other cases were cited showing it to be fully established by authority—recent and strong authority—that physical impact or lesion is not a necessary element in the case of recovery of damage in ordinary cases of tort.".

The departure from the Coultas case is not confined, however, to the British Dominions. In *Purcell* v. *St. Paul City R. Co.,* 48 Minn. 134; 16 L. R. A. 203 (1892), plaintiff was pregnant and while a passenger on one of defendant's trains sustained so severe a nervous shock through defendant's negligence that she suffered a miscarriage. The court in allowing recovery said:

> "On the argument there was much discussion of the question whether fright and mental distress alone constitute such injury that the law will allow a recovery for it. The question is not involved in this case. * * * Here is a physical injury, as serious, certainly, as would be the breaking of an arm or a leg. Does the complaint show that defendant's negligence was the proximate cause of that injury? If so, the action will, of course, lie. What is in law a proximate cause is well expressed in the definition, often quoted with approval, given in *Milwaukee & St. Paul R. Co.* v. *Kellogg,* 94 U. S. 469, 24 L. Ed. 256, as follows: 'The primary cause may be the proximate cause of a disaster, though it operates through successive instruments; as, an article at the end of a chain may be moved by a force applied to the other end, that force being the approximate cause of the movement.' * * * The question always is, 'was there an unbroken connection between the wrongful act and the injury—a continuous operation? Did the facts constitute a continuous succession of events

so linked together as to make a natural whole, or
was there some new and independent cause inter-
vening between the wrong and the injury? * * *
In this case the only cause that can be suggested as
intervening between the negligence and the injury
is plaintiff's condition of mind, to-wit, her fright.
* * * Now if the fright was the natural consequence
of—was brought about, caused by—the circum-
stances of peril and alarm in which defendant's
negligence placed plaintiff, and the fright caused
the nervous shock and convulsion and consequent
illness, the negligence was the proximate cause of
those injuries."

The point was made that the plaintiff's delicate condition
rendered her more susceptible to groundless alarm. This the
court answered by saying:

"When the act or omission is negligence as to
any and all passengers, well or ill, any one injured
by the negligence must be entitled to recover the
full extent of the injury so caused, without regard
to whether, owing to his previous condition of
health, he is more or less liable to injury else, as
the court reasoned, in case of a destruction by fire
or wrecking of a railroad car through the neg-
ligence of those in charge of it, if all the passen-
gers but one were able to leave it in time to
escape injury, and that one could not because sick
or lame, he could not recover at all."

We can not quote from all of the decisions which hold to
these views. They are readily available in the reports, among
them: *Alabama Fuel & Iron Co.* v. *Baladoni,* 15 Ala. App.
316, 73 So. 205; *Watson* v. *Dilts,* 116 Ia. 249, 89 N. W. 1068;
*Whitsell* v. *Watts,* 98 Kan. 508, 159 Pac. 401; *Stewart* v.
*Arkansas Southern Ry. Co.,* 112 La. 764, 36 So. 676; *Green*
v. *Shoemaker,* 111 Md. 69, 73 Atl. 688; *Kimberly* v. *Howland,*
143 N. C. 398, 55 S. E. 778; *Salmi* v. *Columbia etc. R. Co.,*
75 Ore. 200, 146 Pac. 819; *Simone* v. *Rhode Island Co.,* 28 R.
I. 186, 66 Atl. 202; *Mack* v. *South-Bound R. Co.,* 52 S. C.
323, 29 S. E. 905; *Memphis Street Ry. Co.* v. *Bernstein,* 137
Tenn. 637, 194 S. W. 902; *Gulf etc. R. Co.* v. *Hayter,* 93 Tex.
239, 54 S. W. 944; *O'Meara* v. *Russell,* 90 Wash. 557, 156

Pac. 550; *Pankopf* v. *Hinkley*, 141 Wis. 146, 123 N. W. 625. Two of the above cases, *Simone* v. *The Rhode Island Co.* and *Mack* v. *South-Bound Co.* contain exhaustive discussions of the question both upon principle and authority.

To us the thought that there may be no recovery at all for physical injuries resulting from nervous shock simply because there has been no touching of the person seems strange indeed. As some one states, it savors of a victory of psychology over physiology. As remarked in *Dulieu* v. *White*, "remoteness" relates not to time, but to causal sequence. And if the physical harm be traced directly through plaintiff's fright to defendant's wrong, the fact that defendant could not foresee or anticipate the natural result can not excuse him from the consequences. As for public policy, the strongest policy which appeals to us is that fundamental theory of the common law that for every wrong there should be a remedy. While we are at all times eager to discourage merely vexatious litigation, we are not less concerned with providing redress for injuries resulting from defendant's torts. While it may be that injuries resulting from fright are readily simulated and the avenue for fraud is thus left open to more easy approach, the most that we can say is that if the injury suffered is traced proximately through the fright to defendant's wrong, the matter of sifting the true from the untrue in the proof is more properly addressed to the good sense of our juries than to this court. To deny recovery merely on the ground of expediency appears to us, as it did to the Rhode Island court in *Simone* v. *The Rhode Island Co.*, as a "pitiful confession of incompetence on the part of the courts of justice", a distrust in the capacity of courts and juries which we do not share. Why the problem should be more complex than in the case where the slightest physical impact accompanies the nervous shock we do not understand. And even if it be true, as seems to be the view in some places, that a distinction is to be drawn between the wilful wrongs of the defendant and mere negligent acts or omissions on his part, (*Jeppsen* v. *Jensen*, 47 Utah 536, 155 Pac. 429; *Green* v. *Shoemaker, supra;* and note, Ann. Cas. 1913-E, 506) the defendant here can not profit by that distinction.

But defendant argues that, conceding the principle that bodily injuries induced by fright are compensable, nevertheless the principle can only apply where the wrong of the defendant has been directed at the person injured. We can not follow his argument in that particular, and it is to be noted that the authorities upon which he chiefly relies in this connection (*Phillips* v. *Dickerson*, 85 Ill. 11, 28 Am. Rep. 607; *Reed* v. *Ford*, 129 Ky. 471, 112 S. W. 600. 19 L. R. A. (N. S.) 225) are from those jurisdictions in which physical injuries induced by fright are not recognized as compensable. The reasoning of *Phillips* v. *Dickerson* is to us patently fallacious, Dickerson unlawfully entered plaintiff's house and within her hearing, she being in another room, so violently abused her husband and child that she became terrified and suffered a miscarriage. The question, as stated by the court, was "whether such a result was such a natural and proximate consequence of defendant's conduct as to make him liable therefor." The decision was that the injury suffered being an unnatural and unforeseeable consequence, the damages claimed were too remote to warrant recovery. The case of *Reed* v. *Ford* presented similar facts, the acts of defendant being directed towards a roomer in plaintiff's house. The fright with which she was seized resulted in impairment of her bodily health, but the court held that the injuries were of too remote a character and not sufficiently foreseeable to warrant any liability on defendant's part. Citing the case of *Mitchell* v. *Rochester Ry. Co.*, the court said:

> "It seems to be well settled that no recovery can
> be had for injuries resulting from mere fright,
> caused by the negligence of another, when no im-
> mediate personal injury is received."

Although that case was decided in 1908, the court made no mention of the many cases opposing the rule which it regarded as "well settled."

The error, as we conceive it, in the theory of "remoteness" and "foreseeability", as expressed in *Reed* v. *Ford* and *Phillips* v. *Dickerson* we have already adequately discussed. It is also exemplified in two cases cited by plaintiff, *Jeppsen*

v. *Jensen, supra,* and *Watson* v. *Dilts,* 116 Ia. 249, 89 N. W. 1068, 93 A. S: R. 239.

In the first of these cases the facts upon which it was tried were that defendant, armed with a revolver, entered plaintiff's home and so abused and threatened her husband and children, that she sustained a nervous shock which gave rise to physical infirmity, to her damage. The defense was similar to that here, that there could be no recovery where the wrong of defendant was not directed towards the injured plaintiff, but the court said:

> "We can see no legal distinction from the stand-
> point of civil redress between making an assault
> upon the plaintiff and in making one in her pres-
> ence upon her husband."

The Watson case is very similar on its facts, and with the case of *Spage* v. *Lynn etc. R. Co. supra,* and similar decisions before it, the court found that the damages suffered were not too remote to warrant recovery.

No doubt we could cite further authorities on this question; but to us the answer seems clear. Admitting, as the verdict concludes, that defendant's attack upon Wingo was unjustifiable, and admitting, as it further shows, that as a result thereof plaintiff suffered her fright and consequent miscarriage, we could not, under the theory of the cases we have approved, hold that the verdict was unwarranted. It is not denied that if defendant had wrongfully assaulted Wingo, and in doing so had unintentionally, either with some bodily member or with a weapon, actually touched plaintiff's body, then plaintiff's claim would be secure. Why should it be different on the facts presented? The connection between the injury and defendant's wrong has been proven to the jury's satisfaction. Why defendant should be allowed to shock plaintiff's nervous system, any more than he should be allowed to inflict injury by physical contact, we are at a loss to understand. Plaintiff was where she had a perfect right to be, in her own home, and the fact that defendant, not knowing of her presence, could not foresee the proximate results of his tort will not excuse him from liability. This disposes

of defendant's objections that his instructions lettered "A" and "B" were refused.

Under the views expressed, the jury's verdict has adequate warrant in law; we, therefore, reverse the judgment, reinstate the verdict, and enter judgment thereon.

*Reversed and rendered.*