MANIE *v.* MATSON OLDSMOBILE-CADILLAC COMPANY.

1. NEGLIGENCE — AUTOMOBILE DEALER — STOLEN DEALER LICENSE PLATES—CUSTOMER'S ARREST.

> Plaintiff, who was driving recently purchased automobile, on which dealer had placed stolen dealer license plates, and who was arrested for driving an automobile with stolen registration plates, *held*, entitled to recover for dealer's negligence, since dealer plates were in the sole control of the defendant, as slight precautionary methods, at dealer's place of business, could have been taken to insure plates, placed on plaintiff's automobile, were not stolen.

2. SAME—QUESTION FOR TRIER OF FACTS.

> Negligence is a question of fact and not of law.

3. PLEADING SUFFICIENCY—FACTS.

> Facts presented to court, no matter how extraordinary, are the basis for judging sufficiency of pleadings.

4. APPEAL AND ERROR—NONJURY CASES—FINDINGS OF FACT—PRE-PONDERANCE OF EVIDENCE.

> Court of appeals is bound by trial judge's findings of fact, in nonjury case, absent a showing that the facts are contrary to a clear preponderance of the evidence.

5. SAME—DAMAGES—EMOTIONAL HARM—EVIDENCE.

> Claim of plaintiff, in action for negligence without an accompanying physical injury, whose proof of emotional harm was by her husband, friend, and sister that she was nervous, and no

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 92, 131.
[2] 38 Am Jur, Negligence § 344 *et seq.*
[3] 41 Am Jur, Pleadings § 2 *et seq.*
[4] 5 Am Jur 2d, Appeal and Error § 839 *et seq.*
[5, 6] 22 Am Jur 2d, Damages § 195.
[7] 22 Am Jur 2d, Damages § 196.
[8] 5 Am Jur 2d, Appeal and Error §§ 1014, 1015.

testimony of physician, as to effects of defendant's negligence on plaintiff's nervous system, was introduced *held*, so remote and proof thereof so inadequate that an award of damages could not be sustained under negligence theory.

6. NEGLIGENCE—DAMAGES—EMOTIONAL HARM.

Damages will not be awarded for an emotional or mental disturbance, without accompanying physical injury, caused by defendant's negligence because there is no duty to exercise care to avoid causing mental or emotional harm.

7. SAME—PROBABILITY OF EMOTIONAL HARM.

Mere fact that an act involves an undue probability of mental or emotional harm, and does in fact result therein, is not regarded as a sufficient basis for the maintenance of an action.

8. COSTS — NEITHER PARTY PREVAILING — NEGLIGENCE — EMOTIONAL DAMAGES.

No costs are allowed on appeal in nonjury action for negligence, where judgment of $500 is reduced to disallow recovery of so-called emotional damages, since neither party has prevailed.

Appeal from Muskegon; Piercey (John H.), J. Submitted Division 3 December 8, 1965, at Grand Rapids. (Docket No. 1,057.) Decided February 9, 1966. Leave to appeal granted by Supreme Court April 19, 1966. See 377 Mich 707; 378 Mich 650.

Complaint by Florence Manie against Matson Oldsmobile-Cadillac Company, a Michigan corporation, for damages arising from plaintiff's arrest while driving an automobile which carried stolen dealer license plates, placed thereon by defendant. Judgment for plaintiff. Defendant appeals. Affirmed in part, and reversed in part.

*Marcus, McCroskey, Libner, Reamon, Williams & Dilley (Vernon D. Kortering*, of counsel), for plaintiff.

*Poppen, Street, & Sorensen (Harold M. Street,* of counsel), for defendant.

FITZGERALD, P. J. The unusual train of events which brings about this case and the attendant appeal produces questions for decision by this Court which are no less fascinating than the facts themselves. Broadly stated, the issue before us is whether the plaintiff properly stated a cause of action based on the misadventures which befell her in December, 1963, all stemming from the purchase of a car.

A brief resume produces this intriguing fact situation: On December 6, 1963, Ernest Manie, the husband of the plaintiff, entered into an agreement with the Matson Oldsmobile-Cadillac Company in Muskegon to purchase a 1960 Cadillac automobile with a 1961 Comet to be traded in on it. The 1961 Comet had a trailer hitch attached, which was to be removed by the Grand Rapids firm which originally installed it, prior to the contemplated exchange. At that time, license plates remained with the same owner* and had it not been for the removal of the trailer hitch, the plates would have been switched from the Comet to the Cadillac. However, as an accommodation to Mr. Manie, a salesman for defendant company attached a "dealer plate" to the Cadillac to be used until the trailer hitch could be removed in Grand Rapids and the Comet returned.

The Manies, driving the two cars, went to Grand Rapids, accompanied by Mrs. Manie's sister. After the trailer hitch was removed, Mr. Manie drove the Comet back to Muskegon and Mrs. Manie, driving the Cadillac, decided to do some Christmas shopping. At about 9:30 p.m., a Wyoming police department cruiser required her to pull over to the side of the road and she was requested to follow the cruiser to police headquarters. After Mr. Manie arrived home about 10:30, he received a telephone

---

* CLS 1961, § 257.233 (Stat Ann 1960 Rev § 9.1933).—REPORTER.

call that Mrs. Manie was being held in the Wyoming police station for driving a car with "stolen plates". Mr. Manie called the defendant company's salesman who offered to take another dealer plate to the police station for use in returning the Cadillac to Muskegon, but Mr. Manie declined the offer, picked up the plate himself and took it to the Wyoming police station. By the time Mrs. Manie was able to leave, it was approximately 2 a.m. the following day.

Mrs. Manie received a ticket for illegal use of dealer plates. The salesman for defendant company called the Wyoming police station and was informed that the dealer plate he had placed on the Cadillac was registered in the name of the operator of a used car lot and automobile auction in the Grand Rapids area. The following day, Mrs. Manie went to defendant's place of business and discussed the ticket with the salesman who offered to take care of the ticket by way of explaining the matter to the proper officials. Mrs. Manie declined the offer and retained an attorney to represent her on the ticket. Ultimately, the matter was explained to the authorities regarding how she happened to have the plate and this was accepted by the court and the charge dropped.

Suit against defendant automobile dealer was started by Mrs. Manie in August, 1964, containing three counts; one of negligence; one for breach of contract for failure to furnish a valid plate; and one of misrepresentation based on the innocent, though mistaken, statement to the effect that the Cadillac was in proper condition to be driven on the highway.

An answer denying the charges was filed and the case tried before the court without a jury on June 18, 1965, resulting in a judgment of $500 in favor

of Mrs. Manie for her expenses and also for humilia-
tion, embarrassment, and nervousness brought on
by the previous events and by the harrassment and
teasing she was subjected to by her co-employees
because of the ticket and subsequent legal proceed-
ings.

The trial court, in a lengthy decision, based the
award in part on the fact that the negligence count
was proven because of the sole control of the license
plates being in the hands of the defendant and that
a proper handling of these plates would have pre-
cluded the incidents which took place. To illustrate
the rationale of the trial court, we quote a portion
of the opinion filed in this case:

"I am of the opinion that a cause of action has
been stated on a negligence theory and we will pro-
ceed to set forth the theory upon which I recite this.
I might hasten to add that it is pretty clear that also
under a misrepresentation theory, the plaintiff is
entitled to recover. As to negligence, I am of the
opinion that the sole control of this license plate
was in the hands of the defendant. I am further
convinced also that with very slight precautionary
measures and techniques including the posting of a
sign at a proper place near the places of sale, where
the salesmen work, they could take the license plate,
quickly glance at a chart and ascertain whether or
not the plate they are about to place on a car, is a
plate that could be lawfully placed there. I am
also of the opinion that it is foreseeable that a plate
which is not in the lawful possession of the defend-
ant, either through mistake or otherwise, can very
easily cause the exact results that were caused in
the case at bar. That a person driving a motor
vehicle would be pulled over if the plate is not a
proper one and would be at least, temporarily de-
tained or arrested. I think this is a natural con-
sequence of an improper plate being placed upon a
car. Now perhaps the court is a little closer to a

knowledge of the fact that police officials do make a surveillance of missing plates, but I don't think it unreasonable to say that persons who deal in the sale of automobiles are aware of the fact that there is a surveillance and a look-out for either stolen plates, missing plates, misplaced plates, and that the officer certainly when he has, when he sees a plate that is so listed, has every reason to stop the driver and to pull them over. So I think the [sic], and so find that the plaintiff's agent, or the defendant's agent rather, was negligent in his dealing with this plate, even though it may have been in the ordinary course of business. If this is the ordinary course of business, I submit that it is negligent handling and should be corrected. The facts that it is generally engaged in by others does not remove it from what I consider to be obviously negligent handling of the plates."

We subscribe to the trial court's decision that plaintiff pleaded and proved a cause of action for negligence. It has long been recognized that, as a general rule, negligence is a question of fact and not of law. *Miller* v. *Miller* (1964), 373 Mich 519. The facts presented to a court, no matter how extraordinary they may be, are the basis on which the sufficiency of the pleadings must be judged. Admittedly, the fact situation before us is bizarre. Nevertheless, it did occur.

No argument is presented that the trial judge was incorrect in any of his findings, and absent a showing that the facts as found by the trial judge are contrary to a clear preponderance of the evidence, this Court is bound by them. *Shaw* v. *Wiegartz* (1965), 1 Mich App 271.

That the plaintiff also sued in counts of contract and misrepresentation and that such counts will not support recovery are other grounds urged by defendant on appeal. With this contention we agree,

but the fact that a valid cause of action has been pleaded and proven in negligence obviates the need for disposing of the issues of the validity of contract and misrepresentation counts.

The remaining issue before us is the question of damages, wherein defendant contends that plaintiff's recovery may not be sustained upon any legal theory or by the evidence in the case.

Defendant, however, concedes in its brief as follows:

"The only monetary expenses or loss testified to by the plaintiff was the $75 paid to Attorney Reamon; the loss of 7 hours regular work at $1.96 per hour and 1 hour of overtime at time and a half, or a total in lost wages of $16.66, and two trips to Grand Rapids, which if taken at 80 miles per round trip, or a total of 160 miles at 10¢ per mile, which comes to $16.00, a total of $107.66."

Defendant asserts that any award over this sum is a reward for nervousness, humiliation, and mental anguish and consequently not sustainable. It is true that the record contains no physician's testimony as to the effect of the events on plaintiff's nervous system. There is no proof beyond testimony of plaintiff, her husband, her sister and a friend as to her alleged "nervousness". There is no claim of actual physical injury.

Under these conditions, we agree with defendant that plaintiff's "emotional damages" are so remote and the proof thereof so inadequate that an award on this ground could not be sustained under a negligence theory, or *arguendo,* the contract and misrepresentation theories which plaintiff also pleaded.

That plaintiff should not have recovered for emotional damages under these circumstances, no matter the quantum of proof, is stated in 52 Am Jur, Torts, § 48, p 392:

"The rule denying the right to maintain an action for a mental or emotional disturbance is most frequently applied, or stated to be applicable, in cases of negligence. In this respect, it has been declared that there is no duty to exercise care to avoid causing a mental or emotional disturbance, and the mere fact that an act involves an undue probability of a mental or emotional disturbance, and does in fact result therein, is not regarded as sufficient to make it a basis for the maintenance of an action."

Since this case turns on the question of negligence, we rule that plaintiff did not properly prevail in that portion of the award which reflects emotional distress but that she may be awarded the sums as specified, *supra,* indicating actual dollars-and-cents loss, and the costs as taxed in the trial court.

The trial court is affirmed in that portion of its decision holding that plaintiff stated a cause of action in negligence and reversed as to the portion of the award beyond the sums herein set forth.

No costs, neither party having prevailed.

HOLBROOK and T. G. KAVANAGH, JJ., concurred.