MANIE *v.* MATSON OLDSMOBILE-CADILLAC COMPANY.

DECISION OF THE COURT.

1. NEGLIGENCE—DAMAGES—EMOTIONAL DISTRESS.
   Determination of Court of Appeals disallowing recovery of damages for emotional distress in action arising from plaintiff's arrest while driving an automobile which carried stolen dealer license plates, negligently placed thereon by defendant, is affirmed.

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 3, 6] 22 Am Jur, False Imprisonment § 130.
   22 Am Jur 2d, Damages § 195.
[2] 22 Am Jur 2d, Damages § 195.
[4] 20 Am Jur 2d, Courts § 71.
[5] 20 Am Jur 2d, Costs §§ 10, 14, 15.

SEPARATE OPINION.

DETHMERS, C. J., and KELLY and O'HARA, JJ.  ·

2. NEGLIGENCE—DAMAGES—EMOTIONAL DISTRESS WITHOUT PHYSICAL INJURY.

*There can be no recovery in this State for mental or emotional distress unaccompanied by physical injury, arising out of simple negligence.*

3. SAME—DAMAGES—EMOTIONAL DISTRESS WITHOUT PHYSICAL INJURY.

*Plaintiff, who was driving recently purchased automobile, on which dealer had placed stolen dealer license plates, and who was arrested for driving an automobile with stolen plates, held, not entitled to recover for alleged nervous distress and emotional upset, absent physical injury.*

4. COURTS—OPINIONS—CONCURRENCE IN RESULT.

*It is impossible to tell on what basis full concurrence was withheld by Justices who concur only in result.*

5. COSTS—NEGLIGENCE—EMOTIONAL DISTRESS WITHOUT PHYSICAL INJURY.

*No costs are awarded in appeal from Court of Appeals decision which denied recovery to plaintiff for nervous distress and emotional upset unaccompanied by physical injury, which resulted from her arrest for driving car with stolen dealer plates, furnished negligently by defendant automobile dealer, because plaintiff's proofs of such distress in this case are inadequate as a matter of law to allow a judgment in any amount therefor, neither party having prevailed in full.*

SEPARATE OPINION.

T. M. KAVANAGH, SOURIS, and ADAMS, JJ.

6. NEGLIGENCE—EMOTIONAL DISTRESS WITHOUT PHYSICAL INJURY—DAMAGES—EVIDENCE.

*Plaintiff is denied recovery for nervous distress and emotional upset, unaccompanied by physical injury, resulting from her arrest for driving a car with stolen license plates, furnished negligently by defendant automobile dealer, because plaintiff's proofs of such distress in this case are inadequate as a matter of law to allow a judgment in any amount therefor.*

Appeal from Court of Appeals, Division 3; Fitzgerald, P. J., Holbrook and T. G. Kavanagh, JJ.,

affirming in part, Muskegon; Piercey (John H.), J. Submitted December 7, 1966. (Calendar No. 16, Docket No. 51,424.) Decided March 7, 1967.

2 Mich App 315, affirmed.

Complaint by Florence Manie against Matson Oldsmobile-Cadillac Company, a Michigan corporation, for damages arising from plaintiff's arrest while driving an automobile which carried stolen dealer license plates, placed thereon by defendant. Judgment for plaintiff in trial court. Defendant appealed. Judgment affirmed in part and reversed in part by Court of Appeals. Plaintiff appeals. Affirmed.

*Marcus, McCroskey, Libner, Reamon, Williams & Dilley (Vernon D. Kortering,* of counsel), for plaintiff.

*Poppen, Street & Sorensen (Harold M. Street,* of counsel), for defendant.

O'HARA, J. This is an appeal on leave granted from a decision of the Court of Appeals (2 Mich App 315), which modified a judgment for plaintiff-appellant entered in the circuit court. The facts and issues are accurately stated by the Court of Appeals. We quote:

"On December 6, 1963, Ernest Manie, the husband of the plaintiff, entered into an agreement with the Matson Oldsmobile-Cadillac Company in Muskegon to purchase a 1960 Cadillac automobile with a 1961 Comet to be traded in on it. The 1961 Comet had a trailer hitch attached, which was to be removed by the Grand Rapids firm which originally installed it, prior to the contemplated exchange. At that time, license plates remained with the same owner and

had it not been for the removal of the trailer hitch, the plates would have been switched from the Comet to the Cadillac. However, as an accommodation to Mr. Manie a salesman for defendant company attached a 'dealer plate' to the Cadillac to be used until the trailer hitch could be removed in Grand Rapids and the Comet returned.

"The Manies, driving the two cars, went to Grand Rapids, accompanied by Mrs. Manie's sister. After the trailer hitch was removed, Mr. Manie drove the Comet back to Muskegon and Mrs. Manie, driving the Cadillac, decided to do some Christmas shopping. At about 9:30 p.m., a Wyoming police department cruiser required her to pull over to the side of the road and she was requested to follow the cruiser to police headquarters. After Mr. Manie arrived home about 10:30, he received a telephone call that Mrs. Manie was being held in the Wyoming police station for driving a car with 'stolen plates.' Mr. Manie called the defendant company's salesman who offered to take another dealer plate to the police station for use in returning the Cadillac to Muskegon, but Mr. Manie declined the offer, picked up the plate himself and took it to the Wyoming police station. By the time Mrs. Manie was able to leave, it was approximately 2 a.m. the following day.

"Mrs. Manie received a ticket for illegal use of dealer plates. The salesman for defendant company called the Wyoming police station and was informed that the dealer plate he had placed on the Cadillac was registered in the name of the operator of a used car lot and automobile auction in the Grand Rapids area. The following day, Mrs. Manie went to defendant's place of business and discussed the ticket with the salesman who offered to take care of the ticket by way of explaining the matter to the proper officials. Mrs. Manie declined the offer and retained an attorney to represent her on the ticket. Ultimately, the matter was explained to the authorities regarding how she happened to have the plate and

this was accepted by the court and the charge dropped.

"Suit against defendant automobile dealer was started by Mrs. Manie in August, 1964, containing three counts: one of negligence; one for breach of contract for failure to furnish a valid plate; and one of misrepresentation based on the innocent, though mistaken, statement to the effect that the Cadillac was in proper condition to be driven on the highway.

"An answer denying the charges was filed and the case tried before the court without a jury on June 18, 1965, resulting in a judgment of $500 in favor of Mrs. Manie for her expenses and also for humiliation, embarrassment, and nervousness brought on by the previous events and by the harassment and teasing she was subjected to by her co-employees because of the ticket and subsequent legal proceedings."

The Court of Appeals held:

"The trial court is affirmed in that portion of its decision holding that plaintiff stated a cause of action in negligence and reversed as to the portion of the award beyond the sums herein set forth."

The portion of the award of damages disallowed by the Court of Appeals was for nervousness, humiliation, and emotional distress unaccompanied by physical injury. The disallowance was based on a general rule found in 52 Am Jur, Torts, § 48, pp 392, 393. We do not agree that the cited general rule controls since specific Michigan case precedent is involved.

The Court first considered the question in *Nelson* v. *Crawford* (1899), 122 Mich 466 (80 Am St Rep 577), and denominated it "new in this State." In that case the trial court directed a verdict for defendant. A trickster had frightened a pregnant

woman and she alleged a miscarriage resulted. The trial judge relied on the following language in *Mitchell* v. *Railway Co.* 151 NY 110 (34 LRA 783, 56 Am St Rep 605):

" 'If the right of recovery in this class of cases should be once established, it would naturally result in a flood of litigation in cases where the injury complained of may be easily feigned without detection, and where the damages must rest on mere conjecture or speculation. The difficulty which often exists in cases of alleged physical injuries, in determining whether they exist, * * * would not only be greatly increased, but a wide field would be opened for fictitious or speculative claims. To establish such a doctrine would be contrary to principles of public policy. * * * We think the most reliable and better-considered cases, as well as public policy, fully justify us in holding that the plaintiff cannot recover for injuries occasioned by fright, *as there was no immediate personal injury.*' " (Emphasis supplied.) *Nelson* v. *Crawford, supra,* p 468.

Thus, as of that time our Court denied recovery for emotional distress unaccompanied by physical injury and established the rule in Michigan. It should be noted that the Court there dealt with negligence only. It excepted a malicious wrong, where an intent to injure could be shown.

Our Court again addressed itself to this question in *Alexander* v. *Pacholek,* 222 Mich 157. In that case the action was based on an alleged trespass in the nature of an unauthorized entry into a private home. At the conclusion of the proofs the trial court refused to direct a verdict and the jury awarded $500 damages. Our Court there unequivocally held (p 163):

"Whatever may be the merits of the respective rules of damage this Court has aligned itself with those courts which hold that no damages can be

assessed for fright or mental distress unless accompanied with physical injury. The case is devoid of any evidence of *assault,* and, if we apply the rule laid down in *Nelson* v. *Crawford, supra,* the defendant was entitled to a directed verdict. The trial court was in error in not granting defendant's motion." (Emphasis supplied.)

Appellant claims this rule was modified by *Stewart* v. *Rudner,* 349 Mich 459. This was an action *ex contractu.* A directed verdict was denied and the jury awarded damages. This Court held (pp 475, 476):

"The damages claimed are [in part] for pain and mental suffering. * * * The jury was justified in finding that these resulted directly from defendant's failure to perform his *contractual* obligations." (Emphasis supplied.)

As a modification of the rule applying in negligence cases as claimed by appellant, several infirmities are present. First, only four Justices signed the opinion. Four "concurred in the result." It is impossible to tell on what basis full concurrence was withheld by those concurring in result only. Secondly, in that case, the action was for breach of contract. We consider here precedent established in actions *ex delicto.* Only passing reference is made in *Stewart* to the situation in tort cases. In speaking of the caution courts have employed in not allowing damages for mental suffering, absent physical injury, the Court in that case said (p 467):

"These and similar objections to recovery for mental disturbance, applicable equally to tort and contract actions, have been so thoroughly demolished in recent years that we will not take the time for review. See Prosser, Law of Torts (2d ed), § 37, 1 Harper and James, Law of Torts, ch 9, and cases and articles there cited. *Although the law*

*in this field is in a state of marked transition and
fluidity, it is not too early to state that there is a
marked trend towards recovery.*" (Emphasis supplied.)

On the basis of the foregoing language we cannot
say that this Court modified or repudiated the rule
in negligence cases in our State by its decision in
*Stewart.*

Appellant further contends that modifications of
the *Nelson-Alexander* rule have been made in the
field of workmen's compensation and in actions for
loss of consortium. Whether such be correct, we
do not and need not here decide. We think appellant correctly states the question we must pass on
in this case:

"This Court is asked, here and now, to lay before
the bench and bar of this State a new workable
rule in this area of emotional damages, a rule which
will set forth whether the reasoning of *Nelson* and
*Alexander* is still to be followed."

We derive little help from decisions from other
jurisdictions. The state of the law is accurately
characterized in 64 ALR2d 100, at p 103:

"The case law in the field here treated is in an
almost unparalleled state of confusion and any attempt at a consistent exegesis of the authorities is
likely to break down in embarrassed perplexity.
Early attempts by the courts to deal with the questions were complicated by the lack of any adequate
body of legal authorities as well as by the inadequacy of the factual or scientific information available."

Plaintiff-appellant contends that New York and
New Jersey have repudiated the *Nelson-Alexander*
rule. Defendant, contrariwise, asserts the cases that
she relies on can be distinguished upon their facts.

Whichever is correct, we must speak with finality for this State. We hold that at present in Michigan there is no recovery for mental or emotional distress arising out of simple negligence, absent physical injury.

The factual background of this case does not present any persuasive reason for abrogating the rule. The proof of this element of damage relied upon by appellant in her appendix is as follows:

"*Q.* Mrs. Manie, did this entire incident upset you?
"*A.* Yes, sir.
"*Q.* Does it still upset you?
"*A.* Yes, sir.
"*Q.* Are you a nervous person?
"*A.* Well, I guess so. Everybody tells me so.
"*Q.* Do you take pills, Mrs. Manie?
"*A.* Yes, I do.
"*Q.* What kind of pills, if you know?
"*A.* Librium.
"*Q.* Is that to calm your nerves?
"*A.* Yes, sir.
"*Q.* Is that by doctor prescription?
"*A.* Dr. Voikos prescription.
"*Q.* Did you take pills before this incident?
"*A.* Not to speak.
"*Q.* You did take pills though?
"*A.* I have taken pills off and on for years. On Third Street.

"*Mr. Street.* I didn't apparently—missed something.

"*The Court.* What did you miss?

"*Mr. Street.* Dr. Wickes?

"*The Court.* Voikos.

"*Mr. Street.* How does he get into the picture?

"*Mr. Kortering.* He is the prescribing doctor for the pills.

"*Mr. Street.* I object.

"*Mr. Kortering.* I have no objection if you want to strike it.

"*The Court.* All right.

"*Q.* After this incident, Mrs. Manie, at your place of employment, were certain conversations made to you by your co-employees with reference to this incident?

"*A.* Yes, sir.

"*Q.* Did they upset you?

"*A.* Yes, sir.

"*Q.* Have they continued?

"*A.* Yes, sir.

"*Q.* Do they still upset you?

"*A.* Oh, yes, sir.

"*Q.* Are you upset today about being in court?

"*A.* Yes, sir."

By reason of the foregoing limited proof of alleged resultant nervous distress and emotional upset, we are not disposed to disturb our settled precedent. The decision of the Court of Appeals is affirmed.

No costs, neither party having prevailed in full.

DETHMERS, C. J., and KELLY, J., concurred with O'HARA, J.

SOURIS, J. (*concurring in affirmance*). If it be assumed, *arguendo,* that this State's law allows recovery of damages in a negligence action for emotional distress caused by a defendant's negligent act not involving a physical impact upon plaintiff, plaintiff's proofs of such distress in this case would be inadequate as a matter of law upon which to allow a judgment in any amount therefor. The sole substance of those proofs, quoted in full in my Brother O'HARA's opinion, is that the "incident" upset plaintiff, that she has been further upset by the comments made by her co-employees relating thereto and, conceivably, that she has taken some pills for her distress! *De minimus non curat lex.* We are obliged to affirm the Court of Appeals' decision

whatever may be our opinion regarding the applicable law of recoverable damages in negligence cases.

Under such circumstances, this is *not* the case in which this Court should undertake to "speak with finality" on a legal issue which is vexing courts and legal commentators throughout the common-law world. There is time enough for such pronouncements by this Court when they must be made for decisional purpose.

Affirmed. Defendant may tax its costs.

T. M. KAVANAGH and ADAMS, JJ., concurred with SOURIS, J.

BLACK, J., did not sit.

BRENNAN, J., took no part in the decision of this case.