DALEY v. LaCROIX

OPINION OF THE COURT

1. NEGLIGENCE—EMOTIONAL DISTRESS—PHYSICAL INJURY—PHYSICAL
CONTACT—DAMAGES.

Plaintiff, in a properly pleaded and proved action, may recover
damages for physical consequences to himself where a definite
and objective physical injury is produced as a result of emo-
tional distress proximately caused by defendant's negligent
conduct, notwithstanding the absence of any physical impact
upon plaintiff at the time of the mental shock.

2. NEGLIGENCE—EMOTIONAL DISTRESS—STANDARD OF CONDUCT.

Defendant's standard of conduct in an action to recover dam-
ages for objective physical injury produced as a result of
emotional distress proximately caused by defendant's negligent
conduct is measured by reactions to be expected of normal
persons and, absent specific knowledge of plaintiff's unusual
sensitivity, there should be no recovery for hypersensitive
mental disturbance where a normal person would not be
affected under the circumstances.

3. NEGLIGENCE—EMOTIONAL DISTRESS—BURDEN OF PROOF—PROXI-
MATE CAUSE.

Plaintiff in an action to recover damages where a definite and
objective physical injury is produced as a result of emotional
distress, has the burden of proof that the physical harm or
illness is the natural result of the fright proximately caused
by defendant's conduct, as men of ordinary experience and
judgment must be able to conclude, after sufficient testimony

REFERENCES FOR POINTS IN HEADNOTES

[1-8] 52 Am Jur, Torts §§ 48, 57.
Liability of tortfeasor for consequences of act induced by fear
aroused by tort. 35 ALR 1447.
Right to recover for emotional disturbance or its physical con-
sequences, in the absence of impact or other actionable wrong.
64 ALR2d 100.

has been given to enable them to form an intelligent opinion, that the physical harm complained of is a natural consequence of the alleged emotional disturbance which in turn is proximately caused by defendant's conduct.

4. NEGLIGENCE—EMOTIONAL DISTRESS—DAMAGES—ACTION—PROSPEC-TIVE APPLICATION.

Recovery of damages for a definite and objective physical injury produced as a result of emotional distress proximately caused by defendant's negligent conduct applies to all pending and future cases.

5. NEGLIGENCE — EMOTIONAL DISTRESS — DAMAGES — PROXIMATE CAUSE — INFERENCES — PHYSICAL INJURY.

Testimony as to a plaintiff's sudden loss of weight, her inability to perform ordinary household duties and extreme nervousness and irritability, in an action to recover damages claimed to be a result of emotional distress, are facts from which a jury could find or infer a compensable physical injury where there was medical testimony of a diagnosis that the plaintiff was a chronic psychoneurotic in partial remission and that this state or condition was attributed to an explosion caused by defendant's acts, as the jury could reasonably find or infer from such facts a causal relationship between the fright occasioned by defendant's negligence and the injuries alleged by plaintiff; therefore, the trial court erred in taking plaintiff's case from the jury and in striking her husband's claim for medical expenses.

CONCURRING OPINION

DETHMERS, BLACK, and T. G. KAVANAGH, JJ.

6. NEGLIGENCE — IMPACT RULE — EMOTIONAL DISTRESS — RETROSPEC-TIVE EFFECT.

*Decision overruling the impact rule in emotional distress cases is to be given retrospective effect, inasmuch as neither impairment of the obligations of contracts nor injurious affecting of vested rights under earlier decisions is involved, and applies to all pending and future cases including those in which trial or appeal occurs after the date of filing this decision.*

DISSENTING OPINION

T. E. BRENNAN, C. J., and KELLY, J.

7. NEGLIGENCE—PHYSICAL INJURY—DAMAGES—NO IMPACT.

*Plaintiffs should not recover damages where they did not suffer definite and objective physical injury produced without impact*

*by the negligent act of defendant; as recovery should not be permitted for traumatic neurosis, emotional disturbance and nervous upset where no impact with the persons occurred.*

Appeal from Court of Appeals, Division 2, Lesinski, C. J., and Quinn and Moody, JJ., affirming Macomb, Howard R. Carroll, J. Submitted March 10, 1970. (Calendar No. 18, Docket No. 52,220.) Decided September 22, 1970.

13 Mich App 26 reversed.

Complaint by Estelle Daley, Leonard H. Daley, and Timothy Daley, by his next friend, Leonard H. Daley, against Charles LaCroix for personal injuries and property damage. Directed verdict for defendant. Plaintiffs appealed to the Court of Appeals. Affirmed. Plaintiffs appeal. Reversed and remanded for new trial.

*Soma, Oster & Hoste* (by *Jacob M. Femminineo*), for plaintiffs.

*Arthur W. Mitchell,* for defendant.

T. M. KAVANAGH, J. This appeal presents as a threshold question an issue which conceptually, though not decisionally, equally divided our Court in *Manie* v. *Matson Oldsmobile-Cadillac Company* (1967), 378 Mich 650, *viz.*, whether the "impact" rule in emotional distress has any continued vitality in the Michigan civil jurisprudence.

On July 16, 1963, about 10 p.m., defendant was traveling west on 15 Mile Road near plaintiffs' farm in Macomb County. Defendant's vehicle left the highway, traveled 63 feet in the air and 209 feet beyond the edge of the road and, in the process,

sheared off a utility pole. A number of high voltage lines snapped, striking the electrical lines leading into plaintiffs' house and caused a great electrical explosion resulting in considerable property damage.

Plaintiffs claimed, in addition to property damage, that Estelle Daley suffered traumatic neurosis, emotional disturbance and nervous upset, and that Timothy Daley suffered emotional disturbance and nervousness as a result of the explosion and the attendant circumstances.

The case was tried to a jury in Macomb County Circuit Court. At the conclusion of plaintiffs' proofs, on motion of defendant, the trial judge directed a verdict against Timothy Daley in that no proper evidence of a personal injury to him had been presented, and against Estelle Daley in that she had failed to prove a causal relationship between the accident and her claimed personal injury. In the Leonard H. Daley action he directed the jury to disregard any proof of hospital expenses paid by plaintiff on behalf of Timothy and Estelle. The jury returned a judgment in favor of Leonard H. Daley for property damage in the amount of $2,015.20.

The Court of Appeals (13 Mich App 26) affirmed the trial court's grant of a directed verdict upon the ground that Michigan law denies recovery for negligently caused emotional disturbance absent a showing of physical impact, citing *Nelson* v. *Crawford* (1899), 122 Mich 466; *Ellsworth* v. *Massacar* (1921), 215 Mich 511;[1] *Alexander* v. *Pacholek* (1923),

[1] We note and distinguish that *Ellsworth* v. *Massacar* (1921), 215 Mich 511, involves the recovery of damages for fear of injury to another or shock or mental anguish at witnessing such injury. See, generally, Prosser, Torts (3d ed), § 55, pp 352–354; 38 Am Jur 2d, Fright, Shock, and Mental Disturbance, §§ 36–39, pp 45–51; 29 ALR3d 1337, 1347–1349. It is cited as authority only as *a fortiori* reasoning grounded upon the issue herein discussed. We hasten to add, the instant case is not the case in which this Court should undertake to speak out with finality on the legal issue of damages

222 Mich 157; *Manie* v. *Matson Oldsmobile-Cadillac Company* (1966), 2 Mich App 315.

Leave to appeal to this Court was granted. 381 Mich 805.

Recovery for mental disturbance caused by defendant's negligence, but without accompanying physical injury or physical consequences or any independent basis for tort liability, has been generally denied with the notable exception of the *sui generis* cases involving telegraphic companies and negligent mishandling of corpses. See 23 ALR 361; 64 ALR2d 100, § 7; see, also, Restatement, Torts 2d, § 436A, p 171; 1 Cooley, Torts (4th ed), pp 95–102.

On the other hand the law had always permitted recovery in closely analogous situations notwithstanding the fact that plaintiff's mental or emotional reactions were a necessary element in the chain of causation. See 38 Am Jur, Negligence, §§ 78–80, pp 737–739. Also, compensation for a purely mental component of damages where defendant negligently inflicts an *immediate physical injury* has always been awarded as "parasitic damages." See 1 Street, Foundations of Legal Liability, 461; 1 Cooley, Torts (4th ed), p 107; 2 Harper & James, Torts, § 18.4, p 1032; Prosser, *supra*, at p 349. See, also, 22 Am Jur 2d, Damages, § 195 *et seq.*, discussed *infra*.

Where, however, a mental disturbance results mediately in physical injury, the authorities divide.[2]

---

for emotional disturbance caused by injury to third parties and withhold decision until the proper case is presented. For an excellent analysis and discussion of this problem, see vol 11, For the Defense, No 4 (April 1970), pp 41–43.

[2] The state of case law in this field is excellently summarized in 64 ALR2d 100, at p 103:

"The case law in the field here treated is in an almost unparalleled state of confusion and any attempt at a consistent exegesis of the authorities is likely to break down in embarrassed perplexity. Early attempts by the courts to deal with the questions were complicated by the lack of any adequate body of legal authorities as well as by the inadequacy of the factual or scientific information available."

The early judicial response to this problem was to deny recovery based upon several grounds:

"The same objections against allowing recovery have been advanced: it is said that mental disturbance cannot be measured in terms of money, and so cannot serve in itself as a basis for the action; that its physical consequences are too remote, and so not 'proximately caused;' that there is a lack of precedent, and that a vast increase in litigation would follow." Prosser, Torts (3d ed), § 55, p 346.

These objections, however, could not withstand close scrutiny and the courts began pointing out the logical invalidity of these reasons and repudiating the decisions resting upon such reasoning.[3] The final bastion against allowing recovery is the requirement of some impact upon the person of the plaintiff. It is this doctrine and its continued vitality in our state[4] which we must now consider.

In the landmark decision of *Victorian Railways Commissioners* v. *Coultas* (1888), 13 AC 222, recovery for a much-disputed damage to plaintiff's nervous system caused by defendant's oncoming train was denied upon the ground that:

"Damages arising from mere sudden terror unaccompanied by any actual physical injury, but occasioning a nervous or mental shock, cannot under such circumstances, their Lordships think, be considered a consequence which, in the ordinary course of things, would flow from the negligence of the gatekeeper. If it were held that they can, it appears to their Lordships that it would be extending the liability for negligence much beyond what that liability has hitherto been held to be. Not only in such a case

---

[3] The most current judicial repudiation is expressed in *Niederman* v. *Brodsky* (1970), 436 Pa 401 (261 A2d 84).

[4] *Nelson* v. *Crawford* (1899), 122 Mich 466; *Ellsworth* v. *Massacar* (1921), 215 Mich 511; *Alexander* v. *Pacholek* (1923), 222 Mich 157; *Manie* v. *Matson Oldsmobile-Cadillac Company* (1967), 378 Mich 650

as the present, but in every case where an accident caused by negligence had given a person a serious nervous shock, there might be a claim for damages on account of mental injury. The difficulty which now often exists in case of alleged physical injuries of determining whether they were caused by the negligent act would be greatly increased, and a wide field opened for imaginary claims."

As a further hedge against fraudulent or fancied claims and the feared flood of litigation,[5] a large number of American courts in adopting the *Victorian Railways Commissioners* rule superimposed[6] the additional requirement of a contemporaneous physical impact. The leading American authority of *Mitchell* v. *Rochester R. Co.* (1896), 151 NY 107 (45 NE 354), with "remorseless logic"[7] stated the position as follows (pp 109, 110):

---

[5] The policy considerations relating to the feared "flood of litigation" are well presented and analyzed in 64 ALR2d 100, § 6, p 111.

[6] The dubious distinction accorded *Victorian Railways Commissioners* v. *Coultas, supra*, "as the leading case for the proposition that there can be no recovery for the physical results of mental anguish without impact" (see 64 ALR2d 100, at p 135) is open to question especially in view of the statement made in that case at p 226:

"They are of opinion that the first question, whether the damages are too remote, should have been answered in the affirmative, and on that ground, *without saying that 'impact' is necessary*, that the judgment should have been for the defendants." (Emphasis supplied.)

For an interesting account of the nemesis which *Victorian Railways Commissioners* has proven to be, see Prosser, Torts (3d ed), p 350, n 81.

[7] See, Selected Writings of Benjamin Cardozo, The Growth of the Law, at p 215:

"Judges march at times to pitiless conclusions under the prod of a remorseless logic which is supposed to leave them no alternative. They deplore the sacrificial rite. They perform it, none the less, with averted gaze, convinced as they plunge the knife that they obey the bidding of their office. The victim is offered up to the gods of jurisprudence on the altar of regularity. One who seeks examples may be referred to Dean Pound's illuminating paper on 'Mechanical Jurisprudence.' I suspect that many of these sacrifices would have been discovered to be needless if a sounder analysis of the growth of law, a deeper and truer comprehension of its methods, had opened the priestly ears to the call of other voices. We should know, if thus informed, that magic words and incantations are as fatal to our science as they are to any other."

"Assuming that fright cannot form the basis of an action, it is obvious that no recovery can be had for injuries resulting therefrom. That the result may be nervous disease, blindness, insanity, or even a miscarriage, in no way changes the principle. These results merely show the degree of fright, or the extent of the damages.  *  *  *  Therefore the logical result of the respondent's concession would seem to be, not only that no recovery can be had for mere fright, but also that none can be had for injuries which are the direct consequences of it.  *  *  *  These considerations lead to the conclusion that no recovery can be had for injuries sustained by fright occasioned by the negligence of another, where there is no immediate personal injury."

Persuaded by "the clear weight of authority" our Court in *Nelson* v. *Crawford* (1899), 122 Mich 466, and has consistently to date, cited with approval and followed the rule of *Mitchell* v. *Rochester R. Co., supra.*

The life of the law, however, has not been logic but experience.[8] Bowing to the onslaught of exceptions[9] and the growing irreconcilability between legal

---

[8] Holmes, The Common Law, p 1 (1881).

[9] The divergent approaches of the courts to find an exception to the *Rochester R. Co.* rule is excellently summarized by Prosser, Torts (3d ed), pp 350, 351:

"Apart from some quite untenable notions of causal connection, the theory seems to be that the 'impact' affords the desired guarantee that the mental disturbance is genuine. But the same courts have found 'impact' in minor contacts with the person which play no part in causing the real harm, and in themselves can have no importance whatever. 'Impact' has meant a slight blow, a trifling burn or electric shock, a trivial jolt or jar, a forcible seating on the floor, dust in the eye, or the inhalation of smoke. The requirement has even been satisfied by a fall brought about by a faint after a collision, or the plaintiff's own wrenching of her shoulder in reaction to the fright. 'The magic formula "impact" is pronounced; the door opens to the full joy of a complete recovery.' A Georgia circus case has reduced the whole matter to a complete absurdity by finding 'impact' where the defendant's horse 'evacuated his bowels' into the plaintiff's lap."

fact and decretal fiction,[10] a rapidly increasing majority of courts have repudiated the "requirement of impact" and have regarded the physical consequences themselves or the circumstances of the accident as sufficient guarantee.[11]

Pertinently, the New York Court of Appeals in *Battalla* v. *State* (1961), 10 NY2d 237 (176 NE2d 729), expressly overruled its *Mitchell* v. *Rochester R. Co.* decision, *supra,* observing at p 239:

"Before passing to a resume of the evolution of the doctrine in this state, it is well to note that it has been thoroughly repudiated by the English courts which initiated it, rejected by a majority of American jurisdictions, abandoned by many which originally adopted it, and diluted, through numerous exceptions, in the minority which retained it. Moreover, it is the opinion of the scholars that *the right* to bring an action should be enforced."

Based upon close scrutiny of our precedential cases and the authority upon which they rested and cognizant of the changed circumstances relating to the factual and scientific information available,[12] we conclude that the "impact" requirement of the common law should not have a continuing effect in Michigan and we therefore overrule the principle to the contrary contained in our previous cases.

We hold that where a definite and objective physical injury is produced as a result of emotional distress proximately caused by defendant's negligent conduct, the plaintiff in a properly pleaded and proved action may recover in damages for such physical consequences to himself notwithstanding

[10] The end result of disingenuous decision-making is amply illustrated by the disarray of cases annotated in 64 ALR2d 100, pp 137–143.

[11] As noted by Professor Prosser, 19 of the 23 States which so hold on this issue have done so since 1900. See the collection of authorities cited in Restatement, Torts 2d, Appendix, § 436.

[12] See 64 ALR2d 100, § 3, p 104, and authorities cited therein.

the absence of any physical impact upon plaintiff at the time of the mental shock.[13]

The rule we adopt today is, of course, subject to familiar limitations.

Generally, defendant's standard of conduct is measured by reactions to be expected of normal persons. Absent specific knowledge of plaintiff's unusual sensitivity, there should be no recovery for hypersensitive mental disturbance where a normal individual would not be affected under the circumstances. See Prosser, *supra,* at p 352; see, also, 2 Harper & James, *supra,* at p 1035. As stated in comment c, Restatement, Torts 2d, § 313, at p 114:

"On the other hand, one who unintentionally but negligently subjects another to such an emotional distress does not take the risk of any exceptional physical sensitiveness to emotion which the other may have unless the circumstances known to the actor should apprise him of it. Thus, one who negligently drives an automobile through a city street in a manner likely merely to startle a pedestrian on a sidewalk, is not required to take into account the possibility that the latter may be so constituted that the slight mental disturbance will bring about an illness."[14]

Further, plaintiff has the burden of proof that the physical harm or illness[15] is the *natural result* of the fright proximately caused by defendant's conduct. In other words, men of ordinary experience and judgment must be able to conclude, after sufficient testimony has been given to enable them to

[13] See Restatement, Torts 2d, § 436(2), pp 456, 457. But see 2 Harper & James, Torts, § 18.4, p 1038, n 35.

[14] See analysis and commentary on this section in 29 ALR3d 1337, 1347–1349.

[15] An excellent compilation and analysis of authorities dealing with physical consequences and causative factors is collected in 64 ALR 2d 100, pp 127–134.

form an intelligent opinion,[16] that the physical harm complained of is a natural consequence of the alleged emotional disturbance which in turn is proximately caused by defendant's conduct.

Turning to the instant case, we must determine whether to overrule our consistently held doctrine of *Nelson* v. *Crawford, supra,* and its legal progeny retroactively or prospectively.

From a review of our past decisions upon the subject (see *Bricker* v. *Green* [1946], 313 Mich 218; *Sheppard* v. *Michigan National Bank* [1957], 348 Mich 577; *Park* v. *Employment Security Commission* [1959], 355 Mich 103; *Parker* v. *Port Huron Hospital* [1960], 361 Mich 1; and more recently, *Whetro* v. *Awkerman* [1970], 383 Mich 235), and plaintiffs' forthright approach that they are testing a doctrine made suspect in *Manie* v. *Matson Oldsmobile-Cadillac Company, supra,* and last considered in *Alexander* v. *Pacholek, supra,* plus the existence of foreign authority upon identical facts (see *Bowman* v. *Williams* [1933], 164 Md 397 [165 A 182]; *Colla* v. *Mandella* [1957], 1 Wis 2d 594 [85 NW2d 345, 64 ALR2d 95]), we are persuaded to hold that the new rule applies to all pending and future cases, as in *Bricker* v. *Green* (1946), 313 Mich 218.

In view of the above holding it becomes necessary to discuss another issue raised by plaintiffs— whether, considering the evidence in the light most favorable to plaintiffs, sufficient evidence was presented to create a jury question. Denying plaintiffs' motion for a new trial which sought to set aside the directed verdict against plaintiffs Timothy and Estelle Daley, the trial court reasoned:

---

16 See, Smith, *Relation of Emotions to Injury and Disease* (1943), 30 Va L Rev 193; see, also, Smith & Solomon, *Traumatic Neuroses in Court* (1943), 30 Va L Rev 87.

"There was no expert or medical testimony offered on behalf of the minor, Timothy. Extremely vague lay testimony was offered to the effect he was nervous. It was so vague and uncertain it did not, in the court's opinion, reach the dignity of possessing any evidentiary value whatever. It afforded the jury nothing into which the jury could put its 'damage-assessment teeth'. *Vachon* v. *Todorovich* [1959], 356 Mich 182.

"On behalf of Estelle Daley, Dr. Goldin, a psychiatrist, testified. Direct and cross examination were extensive. He testified clearly that she had been neurotic since childhood and the incident complained of did not cause her neurosis. Dr. Goldin indicated the incident could have broken down her 'balances' somewhat although she did not consult him until a year after the accident.

"The lay testimony was of the same type as was given in Timothy's claim. It was vague and uncertain and indefinite."

From an examination of the evidence presented on behalf of Timothy Daley, we believe that, even though the question is a close one, on favorable view, he presented facts from which under our new rule, as announced in this case, a jury could reasonably find or infer a causal relation between defendant's alleged negligence and the injuries alleged. We conclude that Timothy Daley should be given an opportunity to prove his alleged cause of action, if he can do so, at a new trial.

Plaintiff Estelle Daley's claim that she suffered physical consequences naturally arising from the fright proximately caused by defendant's conduct is amply supported by the record. Her sudden loss of weight, her inability to perform ordinary household duties, her extreme nervousness and irritability, repeatedly testified to by plaintiffs, are facts from

which a jury could find or infer a compensable physical injury.

The plaintiffs' testimony is also supported by the medical expert witness, who diagnosed plaintiff Estelle Daley as "a chronic psychoneurotic * * * in partial remission," and who attributed this state or condition to the explosion directly caused by defendant's acts:

"*Q.* I want to ask one more question, from everything that you know about this case, doctor, do you feel there is a causal relationship between the explosion of July, 1963 and the symptoms that she has shown that you have reported?

"*A.* Yes, the trauma is the triggering point for her breaking the balance in her.

"*Q.* By trauma?

"*A.* Any trauma, may be emotional trauma or physical trauma, in this case having this explosive sound that she heard and the fears that were attendant with the explosive sounds."

We hold, as we did in the virtually identical situation presented in *Konieczka* v. *Mt. Clemens Metal Products Co.* (1960), 360 Mich 500, that this record presents sufficient facts from which a jury could reasonably find, or infer therefrom, a causal relationship between the fright occasioned by defendant's negligence and the injuries alleged in plaintiffs' complaint. The trial court erred in taking plaintiff Estelle Daley's case from the jury. *McKinney* v. *Yelavich* (1958), 352 Mich 687; *Baker* v. *Alt* (1965), 374 Mich 492. It follows that the trial court also erred in striking plaintiff Leonard H. Daley's claim for medical expenses.

The order of the trial court granting directed verdicts against plaintiffs Estelle Daley and Timothy Daley and the Court of Appeals' affirmance thereof are reversed and the causes remanded for new trials.

The judgment in favor of plaintiff Leonard H. Daley for property damage and the Court of Appeals' affirmance thereof are reversed and the cause remanded for a new trial to include the claimed medical expenses.

Costs shall abide the final result.

DETHMERS, BLACK, ADAMS, and T. G. KAVANAGH, JJ., concurred with T. M. KAVANAGH, J.

DETHMERS, J. (*concurring*). I concur with and am signing the opinion of Mr. Justice THOMAS M. KAVANAGH in this cause, overruling the so-called "impact" rule in emotional distress cases heretofore followed by this Court.

I should like, however, to add a few words, in the interests of clarity, with respect to the retrospective effect of this decision.

This overruling decision is to be given retrospective effect, inasmuch as neither impairment of the obligations of contracts nor injurious affecting of vested rights, under earlier decisions, is involved. The overruled decisions, of course, remain the law of the case with respect to the particular cases in which rendered. *Donohue* v. *Russell* (1933), 264 Mich 217. As in *Bricker* v. *Green* (1946), 313 Mich 218, this overruling decision applies to this case and to all "pending and future cases". This does not limit the applicability of this decision to cases in which the cause of action accrues after the date of filing this decision, but includes all cases in which trial or appeal occurs after that date.

BLACK and T. G. KAVANAGH, JJ., concurred with DETHMERS, J.

T. E. BRENNAN, C. J. (*dissenting*). If this were a case where a definite and objective physical in-

jury was produced without impact by the negligent act of the defendant, it might be appropriate to adopt the rule set forth in the Restatement of Torts.[*]

This is not such a case. Plaintiffs did not suffer definite and objective physical injury. Plaintiffs suffered, if anything, indefinite and subjective injury. Traumatic neurosis, emotional disturbance and nervous upset are the very type of complaints which ought to be eliminated by restricting "no impact" cases to those in which a definite and objective physical injury occurs.

I would affirm the trial court's grant of directed verdict.

Kelly, J. concurred with T. E. Brennan, C. J.

---

[*] Restatement, Torts 2d, § 436(2), pp 456, 457.