*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CARL HOSKIN, CYNTHIA ROBINSON, and
FRANK HOSKIN,

UNPUBLISHED
September 22, 2022

        Plaintiffs

and

AAROLIND HOSKIN,

        Plaintiff- Appellant

v

No. 357265
Wayne County Circuit Court

DETROIT MEDICAL CENTER,

LC No. 19-015407-NO

        Defendant-Appellee.

Before: GLEICHER, C.J., and MARKEY and PATEL, JJ.

PER CURIAM.

Eight days after plaintiff's[1] father, Aaron Hoskin, checked himself out of defendant's hospital facility against medical advice, he was found deceased. The Wayne County Medical Examiner took possession of Hoskin's body. But Hoskin's family did not learn of his death until six weeks later. Because of the delay, the state of the body's decomposition necessitated a closed-casket funeral.

Defendant did not possess or control Hoskin's body after he checked himself out of the hospital. It was the medical examiner's statutory duty to identify the body and notify Hoskin's next of kin. And plaintiff did not see her father's body or suffer a physical injury. Accordingly, we

---

[1] Four plaintiffs—Carl Hoskin, Cynthia Robinson, Frank Hoskin, and Aarolind Hoskin—were listed as plaintiffs in the original complaint. However, plaintiff Aarolind Hoskin is the only plaintiff involved in this appeal. Accordingly, references to "plaintiff" refer to Aarolind Hoskin. References to "Hoskin" refer to the decedent, Aaron Hoskin. And because Carl and Frank have the same last name, they will be referenced by their first names.

affirm the trial court's order granting summary disposition to defendant on plaintiff's claims for negligent interference with the right of burial and negligent infliction of emotional distress.

## I. BACKGROUND

On October 24, 2018, Hoskin's brother, Frank, drove Hoskin to Detroit Receiving Hospital to be evaluated. But Frank did not wait with Hoskin. After presenting to the emergency room, Hoskin declined to be admitted for treatment and left the hospital against medical advice. Frank received a call from the hospital informing him that his brother had left. Frank spent several hours attempting to locate his brother, but he was unsuccessful. Frank terminated his search and waited for Hoskin to contact him.

Eight days later, on November 2, 2018, Hoskin's body was found on a sidewalk in Detroit, Michigan. The body was in rigor. The body and clothing were saturated with water. Because the body was found in a public place, the Wayne County Medical Examiner was contacted to take possession of the body and investigate. A medical wristband from defendant's facility provided Hoskin's name and date of birth. But there was no other form of identification that provided an address, phone number, or family information.

On November 3, 2018, an autopsy was performed. In an effort to confirm Hoskin's identification, the medical examiner's office faxed a "Medical Records Release Request" to Detroit Receiving Hospital for Hoskin's "Demographic Information" on November 4, 2018. The medical examiner's office faxed another record request to the hospital for Hoskin's "Demographic Information—Next of Kin Info" on November 20, 2018. And, on December 5, 2018, the medical examiner's office faxed a third record request to the hospital for Hoskin's "Demographic Information." It is undisputed that the medical examiner's office did not receive a response to any of the record requests.

Because Frank had not heard from Hoskin after the hospital informed him that Hoskin left against medical advice, Frank contacted the medical examiner's office on December 16, 2018, to inquire if Hoskin was there. The medical examiner's office informed Frank that they had a body matching Hoskin's description. On December 17, 2018, Frank and his brother, Carl, went to the medical examiner's office and identified Hoskin from a photograph that was taken before the autopsy. Plaintiff learned of her father's death after Frank and Carl identified him. Plaintiff did not see her father's body after his death.

The state of decomposition of Hoskin's body necessitated a closed-casket funeral. Wayne County's Deputy Chief Medical Examiner, Dr. Leigh Hlavaty, testified that a body is preserved the entire length of time that it is within the possession and control of the medical examiner's office. Dr. Hlavaty confirmed that proper refrigeration of a body will prevent the body from decaying. Notably, Dr. Hlavaty testified:

> It is the medical examiner['s] role to identify the body and to try to find the next of kin. We can ask the police for assistance, but that falls within the medical examiner responsibilities.

Hoskin's three siblings and plaintiff filed a complaint contending that defendant was liable for negligent interference with the right of burial and negligent infliction of emotional distress. Defendant filed a motion for summary disposition pursuant to MCR 2.116(C)(5), arguing that Hoskin's three siblings did not have standing to pursue claims. The trial court granted the motion, in part, and dismissed the siblings' claims for negligent interference with the right of burial.[2] But the trial court denied the motion with regard to the siblings' claims for negligent infliction of emotional distress. Defendant also filed a motion for summary disposition pursuant to MCR 2.116(C)(8), asserting that plaintiff failed to state viable claims. The trial court denied the motion and discovery commenced. Following discovery, defendant moved for summary disposition pursuant to MCR 2.116(C)(8) and (10). After affording plaintiff additional time to conduct discovery and granting her leave to file an amended complaint,[3] the trial court granted defendant's motion. Plaintiff moved for reconsideration, which the trial court denied. This appeal followed.

## II. STANDARD OF REVIEW

"We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). "Where a motion for summary disposition is brought under both MCR 2.116(C)(8) and (C)(10), but the parties and the trial court relied on matters outside the pleadings, as is the case here, MCR 2.116(C)(10) is the appropriate basis for review." *Silberstein v Pro-Golf of America, Inc*, 278 Mich App 446, 457; 750 NW2d 615 (2008).

A motion for summary disposition pursuant to MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Woodring v Phoenix Ins Co,* 325 Mich App 108, 113; 923 NW2d 607 (2018). We consider all evidence submitted by the parties in the light most favorable to the non-moving party. *El-Khalil*, 504 Mich at 160. Summary disposition under MCR 2.116(C)(10) is only appropriate when there is no genuine issue of material fact. *Id.* "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Zaher v Miotke*, 300 Mich App 132, 139-140; 832 NW2d 266 (2013).

Whether a defendant owes a duty to a plaintiff to avoid negligent conduct is a question of law that we review de novo. *Dyer v Trachtman*, 470 Mich 45, 49; 679 NW2d 311 (2004).

## III. NEGLIGENT INTERFERENCE WITH RIGHT OF BURIAL

Plaintiff argues that she has a viable claim against defendant for negligent interference with the right of burial of her father. We disagree.

A deceased person's next of kin does not have a property right to the decedent's body. *Deeg v Detroit*, 345 Mich 371, 375-376; 76 NW2d 16 (1956). But "Michigan jurisprudence

---

[2] None of the three siblings have appealed the trial court's order.

[3] Plaintiff was the only plaintiff included in the first amended complaint and the siblings' claims were withdrawn.

recognizes a common law cause of action on behalf of the person or persons entitled to the possession, control, or burial of a dead body for the tort of interference with the right of burial of a deceased person without mutilation." *Dampier v Wayne Co*, 233 Mich App 714, 728; 592 NW2d 809 (1999) (quotation marks and citation omitted). "[I]t is an actionable wrong for another to interfere with that right by withholding the body or mutilating it in any way." *Deeg*, 345 Mich at 376 (quotation marks and citations omitted). "The recovery in such cases is not for the damage to the corpse as property, but damage to the next of kin by infringement of [her] right to have the body delivered to [her] for burial . . . ." *Keyes v Konkel*, 119 Mich 550, 551; 78 NW 649 (1899).

In this case, it is undisputed that plaintiff had the power to control the final disposition of her father's remains. The pivotal question is whether defendant owed plaintiff a duty. To succeed on a negligence claim, a plaintiff must demonstrate that "(1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages." *Hill v Sears, Roebuck and Co,* 492 Mich 651, 660; 822 NW2d 190 (2012) (quotation marks and citation omitted). "It is axiomatic that there can be no tort liability unless [a] defendant[ ] owed a duty to [a] plaintiff." *Id*. (quotation marks and citations omitted). Duty may arise from a statute, a contractual relationship, or by application of the common law. *Id.* at 660-661.

Plaintiff does not contend that there was a contractual relationship between the parties. Nor has plaintiff identified a statutory duty owed by defendant as Hoskin's prior medical treater. In circumstances such as this, where an unknown decedent is found in public, it is the *county medical examiner's* duty to take possession and control of the body. MCL 52.205(1). That statutory duty requires the medical examiner to ascertain the identity of a decedent and notify the next of kin of the decedent's death:

> Except as otherwise provided in this subsection, the county medical examiner shall ascertain the identity of the decedent and immediately and as compassionately as possible notify the next of kin of the decedent's death and the location of the body. The notification described in this subsection is not required if a person from the state police, a county sheriff department, a township police department, or a municipal police department states to the county medical examiner that the notification has already occurred. [MCL 52.205(4).]

The medical examiner was acting on his statutory duty to identify Hoskin when a representative of his office requested "demographic information" from defendant's facility. But the deputy medical examiner conceded that this was not the exclusive means available to identify a decedent or locate next of kin. And the mere fact that the medical examiner requested demographic information from defendant does not transfer the statutory duty to identify the decedent to defendant.

Plaintiff maintains that defendant's duty arises under common law, stating simply that defendant "had a duty to not interfere with [plaintiff's] right to the burial of her father" and that "the harm caused by [defendant's] failure to identify the next of kin was foreseeable." The determination of whether a legal duty exists under common law

is a question of whether the relationship between the actor and the plaintiff gives rise to any legal obligation on the actor's part to act for the benefit of the subsequently injured person. The ultimate inquiry in determining whether a legal duty should be imposed is whether the social benefits of imposing a duty outweigh the social costs of imposing a duty. Factors relevant to the determination whether a legal duty exists include the relationship of the parties, the foreseeability of the harm, the burden on the defendant, and the nature of the risk presented. We have recognized, however, that the most important factor to be considered in this analysis is the relationship of the parties and also that there can be no duty imposed when the harm is not foreseeable. In other words, before a duty can be imposed, there must be a relationship between the parties and the harm must have been foreseeable. If either of these two factors is lacking, then it is unnecessary to consider any of the remaining factors. [*Hill,* 492 Mich at 661 (cleaned up).]

Plaintiff has not offered any evidence or argument establishing that there was a legal relationship between the parties. Plaintiff and defendant never directly interacted. Plaintiff does not allege that she had a special relationship with defendant, nor that there was a special relationship between defendant and Hoskin that would give rise to a duty. The physician-patient relationship between defendant and Hoskin ended eight days before his death when he left defendant's medical facility against medical advice. And plaintiff concedes that defendant did not have possession or control of Hoskin's body. If there is no legal relationship between the parties, a duty cannot be imposed. *In re Certified Question from Fourteenth Dist Court of Appeals of Texas*, 479 Mich 498, 508; 740 NW2d 206 (2007). If there is no relationship, it is unnecessary to consider any of the other factors to determine whether a legal duty exists. *Id.* at 507.

Our Supreme Court reached a similar conclusion in *Doxtator v Chicago & West Michigan R Co*, 120 Mich 596, 601; 79 NW 922 (1899). In *Doxtator*, the plaintiff's husband sustained serious injuries while working for the defendant railroad company. *Id*. at 597-598. He was transported to a hospital where the defendant's doctor amputated his lower limbs, but the plaintiff's husband did not survive his injuries. *Id.* at 598-599. A hospital employee cremated the limbs. *Id.* at 599. The widow alleged that the railroad company "deprived [her] of the right to give the remains of her deceased husband a Christian burial" because it "negligently allowed the cremation of the dissevered limbs." *Id.* at 597, 599. The Supreme Court recognized "it is an actionable wrong for another to interfere with that right by withholding the body or mutilating it in any way." *Id*. at 597. But the Court noted that it was "important . . . to inquire just what duty the railroad company was under, and just how far it assumed control over the injured man" to determine whether it can be held liable. *Id*. at 599. Because the railroad company did not have any duty after an ambulance was called and the railroad company's doctor did not have any duty beyond performing the amputation, the *Doxtator* Court concluded that the plaintiff could not establish a cause of action against the railroad for the disposition of the dismembered limbs. *Id.* at 600-601.

In this case, it is undisputed that defendant did not possess or control Hoskin's body. Plaintiff has failed to establish the existence of a relationship that would give rise to a legal obligation to plaintiff. In the absence of a relationship, a duty of care cannot be imposed on defendant. See *Hill*, 492 Mich at 669; *In re Certified Question*, 479 Mich at 507. Accordingly, the trial court did not err in granting defendant's motion for summary disposition regarding plaintiff's claim for negligent interference with the right of burial.

## V. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Plaintiff further argues that she has a valid claim for negligent infliction of emotional distress. We disagree.

There is no cause of action in Michigan that allows a plaintiff to recover damages simply because a defendant negligently caused emotional distress. See *Duran v Detroit News, Inc*, 200 Mich App 622, 629; 504 NW2d 715 (1993). "Michigan recognizes the tort of negligent infliction of emotional distress only when a plaintiff witnesses negligent injury to a third party and suffers mental disturbance as a result." *Teadt v Lutheran Church Missouri Synod*, 237 Mich App 567, 581 n 6; 603 NW2d 816 (1999). See also *Taylor v Kurapati*, 236 Mich App 315, 360; 600 NW2d 670 (1999).

Plaintiff concedes that she did not see her father's decomposed body and acknowledges that she is not claiming damages based on a harm to a third person. But she contends that her claim for negligent infliction of emotional distress is valid because it is premised on a theory of direct causation as recognized in *Daley v LaCroix*, 384 Mich 4, 12-13; 179 NW2d 390, 395 (1970). Plaintiff's reliance on *Daley* is misplaced. In *Daley*, the Supreme Court considered whether the plaintiffs could pursue damages for physical illnesses arising from their fright where the defendant's negligence did not involve any actual physical contact with the plaintiffs. *Id.* at 6-7. The *Daley* Court adopted the following principle: "[W]here a definite and objective physical injury is produced as a result of emotional distress proximately caused by defendant's negligent conduct, the plaintiff in a properly pleaded and proved action may recover in damages for such physical consequences to himself notwithstanding the absence of any physical impact upon plaintiff at the time of the mental shock." *Id.* at 12-13. In other words, emotional distress may provide "the basis for a negligence action only when a plaintiff can also establish *physical* manifestations of that distress." *Henry v Dow Chemical Co*, 473 Mich 63, 79 & n 9; 701NW2d 684 (2005) (emphasis in original).

In this case, plaintiff testified that she has not been diagnosed with stress, anxiety, or any other physical symptoms by a medical professional. More importantly, as discussed above, she is unable to establish a negligence claim against defendant. Accordingly, the trial court did not err by granting defendant's motion for summary disposition with regard to plaintiff's claim for negligent infliction of emotional distress.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Jane E. Markey
/s/ Sima G. Patel